John BURKE, Plaintiff,

v.

**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIPBUILDERS, BLACKSMITHS, FORGERS & HELPERS, and Local 6 Thereof, Defendants.**

No. 45044.

United States District Court
N. D. California.

Nov. 8, 1967.

Richard Gladstein, Norman Leonard, Gladstein, Andersen, Leonard & Sibbett, San Francisco, Cal., for plaintiff.

Charles P. Scully, Donald C. Carroll, San Francisco, Cal., for defendants.

## JUDGMENT FOR DEFENDANTS

ZIRPOLI, District Judge.

John Burke brings this action for reinstatement to membership in, and to his position as officer of, Local 6 of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers (hereinafter referred to as the International). He also seeks damages alleged to be the direct and proximate result of a wrongful, indefinite suspension imposed upon him by the International and complied with by Local 6.

Trial was had from June 13, 1966, through August 26, 1966. Following the filing of briefs and argument in court, the case was submitted for decision on August 11, 1967. The facts which were presented were substantially uncontested.

### FINDINGS OF FACT

1. Prior to January 12, 1966, John Burke was a member in good standing of the International and of Local 6 and was an appointed assistant business manager of the Local.

2. Negotiations in June and July of 1965, between Pacific Coast shipbuilders and ship repair firms and labor representatives led to the drafting of the "1965-1966-1967 Pacific Coast Master Agreement" (hereinafter referred to as the agreement or the contract). The agreement was submitted to appropriate labor organizations, councils, international and local unions for approval. Pacific Coast locals approved the agreement by referendum vote.

3. After the union members had voted to accept the agreement, rumors of irregularities in the voting procedures of some locals came to the attention of John Burke and others. Ed Rainbow, business manager of Local 6, directed John Burke to investigate the matter. Letters were also written to interested labor leaders to attempt to secure an appropriate investigation, and Local 6 sought the advice of an attorney as to what the consequences of the rumored irregularities might be.

4. John Burke, believing that nothing adequate was being done to investigate the rumors, on October 8, 1965, took the agreements from the printer's office. Burke told the printer that he, Burke, had authority to take possession of the contracts when in fact he had none.

5. John Burke felt, at the time of the taking of the contracts, that by acquiring possession and possibly delaying or interfering with the final signing of the agreement that he could precipitate a fruitful investigation of the rumored irregularities. He thought he was acting in the interests of the membership of Local 6.

6. The International, which had officially been supervising Local 6 since March of 1964, decided to assume jurisdiction of union disciplinary proceedings against Burke on charges of violating the International's Constitution.

7. Charges were brought against Burke by International Vice-President James Precht, who had been informally supervising or observing Local 6's actions since 1963. Precht and Burke had come into considerable personal conflict from 1963 to the date the contracts were taken.

8. John Burke was charged with violations of the International Constitution, Article XVII, Sections 1(e), 1(f), 1(g), 1(k), and 1(l).

9. Notice was sent to John Burke that an informal hearing would be held on November 29, 1965, and that a formal trial was scheduled for November 30, 1965, should the informal hearing fail to amicably dispose of the matter.

10. John Burke, personally, and through counsel of his choice, contested the jurisdiction of the International, asserting that Local 6 was the proper forum for union discipline on the facts charged. Alternatively, he requested a thirty day continuance for the purpose of proving the rumored voting irregularities. That request was made on November 18, 1965.

11. The International, on November 24, 1965, ruled that it had jurisdiction under Article XVII, Section 3(b) of its Constitution. The request for a continuance was denied.

12. An informal hearing on November 29, 1965, failed to dispose of the charges and the formal union trial was held November 30, 1965. A Trial Panel composed of two members of the International's Executive Council presided. Evidence was heard from both sides and the union trial was transcribed, the record being in evidence at the trial before this court as Exhibit 21.

13. The Trial Panel recommended a verdict of guilty and a sentence of in-definite suspension from the union, a sentence amounting to expulsion.

14. International President Russell Berg sent copies of the recommendations to members of the Executive Council who were to vote on them. He also sent a cover letter stating his concurrence with the Panel's recommendations.

15. Prior to January 12, 1966, plaintiff received, in his capacity as assistant business manager of Local 6, the sum of $870 per month plus the use of a free union car. After dismissal, he was unemployed for five weeks. Subsequently, he earned $140 per week when working a forty hour week. He worked a forty hour week, with some overtime, except for certain weeks when court appearances were necessary in state and federal courts in connection with his dispute with the union. During those appearances, plaintiff received the equivalent of five or six days' pay.

## ISSUES PRESENTED

1. Does a United States District Court have jurisdiction to review the International's action in this case?

2. If this court has jurisdiction, what is the scope or standard of review and may it include a review of the penalty imposed?

3. Was plaintiff deprived of his rights as guaranteed by 29 U.S.C. § 411(a) (5) (1964), in that his request for a continuance should have been granted?

4. Was plaintiff deprived of his rights as guaranteed by 29 U.S.C. § 411(a) (5), in that the union findings were not supported by the evidence?

5. Was plaintiff deprived of his rights as guaranteed by 29 U.S.C. §§ 411(a) (1), 411(a) (5) (1964), in that he was actually tried, without notice, for prior acts of disagreement with others, including International Vice-President Precht, over labor policy?

6. Was plaintiff deprived of his rights as guaranteed by 29 U.S.C. § 411(a) (5), in that the International

Executive Council was improperly influenced by President Berg's letter stating his accord with the Panel's recommendations?

7. Was the penalty imposed by the union unlawful?

8. Should the plaintiff prevail, what remedies may this court order?

## CONCLUSIONS OF LAW

1. The action of the International in this case may be reviewed by this court.

2. If the findings of the International are supported by any evidence in the record of its trial, those findings must be upheld. The fairness of the hearing procedures is to be tested by all the circumstances and evidence presented at the trial before the court.

3. Plaintiff was deprived of no rights by the denial of his request for a continuance.

4. The union's findings were sufficiently supported by the evidence to preclude judicial intervention in this case by this court.

5. Plaintiff was not denied a fair hearing because he did not show that the Executive Council was improperly motivated or biased.

6. The letter of the International President was not shown to have improperly influenced the voting of the Executive Council.

7. The penalty imposed by the union was not unlawful.

## 1. JURISDICTION

Plaintiff contends that jurisdiction is conferred on this court by 29 U.S.C. §§ 412, 529, and by 28 U.S.C. §§ 1331, 1337. He claims that a two-year history of disagreement over labor policy with the International, of disputes with International Vice-President Precht, and of friction between Local 6 and the International prompted retributive action against the plaintiff. In brief, he contends that his rights under 29 U.S.C. § 411(a) (2) have been infringed.

Section 411(a) (2) provides:

(2) Freedom of speech and assembly.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

Plaintiff further contends that at his hearing on the charges preferred against him, he was tried for the aforementioned prior history without notice and was not accorded a fair trial procedurally. That allegation specifies a denial of his rights under 29 U.S.C. § 411(a) (5).

Section 411(a) (5) provides:

(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

Section 412 provides: "Any person whose rights secured by the provisions of this subchapter [29 U.S.C. §§ 411–415] may bring a civil action in a district court of the United States for

such relief (including injunctions) as may be appropriate. * * *" This court holds that plaintiff's allegations, if true, make out deprivations of rights guaranteed by Section 411. Hence, this court has jurisdiction under § 412. *Cf., e. g.,* International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers v. Rafferty, 348 F.2d 307 (9th Cir. 1965) (disciplined for criticizing others); Grand Lodge of International Association of Machinists v. King, 335 F.2d 340 (9th Cir.), cert. denied, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964) (disciplined for supporting particular candidate); Salzhandler v. Caputo, 316 F.2d 445 (2d Cir.), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963) (disciplined for criticism of others). Of course, the finding of jurisdiction rests on the assumption that plaintiff's pleadings are true. They allege that the International was "out to get" Burke and actually considered acts prior to the one specifically charged. The evidence may show that he received a fair hearing and that he was tried only and properly for his conduct of October 8, 1965.

## 2. STANDARD OF REVIEW

■ A district court, when reviewing union disciplinary action to determine whether evidence supported the union's findings, is not free to substitute its judgment for that of the union. The union must be upheld if its findings are supported by any evidence produced before it at its disciplinary trial. *E. g.,* Cole v. Hall, 339 F.2d 881 (2d Cir. 1965) (findings must be so lacking in evidentiary support as to be unfair); Allen v. International Alliance of Theatrical, Stage Employees and Moving Picture Machine Operators, 338 F.2d 309 (5th Cir. 1964) (must be no evidence to support findings in order for court to act); Vars v. International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, 320 F.2d 576 (2d Cir. 1963) (any evidence will support union findings). In reviewing plaintiff's contentions that the union record does not support the verdict and sentence, that standard will be applied.

■ As for plaintiff's contentions that the procedures of his hearing were unfair, this court will determine the fairness from all the evidence presented at the judicial trial. Even if the union record appears in order, if the plaintiff can show that the union trial body was biased or that, for some reason, he did not receive a fair and impartial determination of guilt, then he may obtain judicial relief. Addison v. Grand Lodge of the International Association of Machinists, 318 F.2d 504 (9th Cir. 1963).

## 3. THE CONTINUANCE

The charges brought against John Burke are set forth below: International Constitution, Article XVII:

### Offenses

Section 1. * * *

* * * * * *

(e) engaging in any activity or course of conduct contrary or detrimental to the welfare or best interest of the International Brotherhood or of a subordinate body;

(f) the commission of any unlawful, dishonest, dishonorable or discreditable act in connection with union duties or responsibilities;

(g) mishandling, misappropriating or otherwise misusing union funds or properties;

* * * * * *

(k) engaging in or fomenting any acts or course of conduct which are inconsistent with the duties, obligations and fealty of the members of a trade union and which violate sound trade union principles or which constitute a breach of any existing collective bargaining agreement;

(l) failure to exercise responsibility toward the International Brotherhood as an institution or engaging in conduct which would interfere with

the International Brotherhood's performance of its obligations;

\* \* \* \* \* \*

■ At the union's formal trial on November 30, 1965, John Burke desired to introduce two items of evidence which he was not able to introduce. First, by letter dated November 18, 1965 (Exh. 20), Burke had requested a thirty day continuance to allow him to prove the rumored irregularities. That request was denied. Burke contends he was thereby denied a fair hearing as guaranteed by Section 411(a) (5). The Trial Panel repeatedly stated that it was not trying the validity of the referendum vote, but that it was only trying Burke's alleged misconduct in taking the contracts from the printer. The Panel did admit into evidence facts showing Burke's good faith and reasonable belief in the voting irregularities (Exh. 21, pp. 38–40, 45–46, 52, 54). Even had a continuance been granted, it does not appear that the Panel would have admitted evidence for the purpose stated in the request for the continuance. The Panel, as indicated below, already was well aware of the rumors and that Burke acted with them in mind. Plaintiff was not prejudiced by the denial of a continuance which would not have produced admissible evidence.

■ Second, Burke sought to introduce a petition signed by members of Local 6 expressing their concern over the referendum vote. It was offered "just to further substantiate that there was a definite concern \* \* \*." (Exh. 21, p. 87). The Panel ruled, "At best it would be considered to be hearsay." (Exh. 21, p. 87). Even though it might not have been hearsay for the purpose of showing *Burke's* concern, the Panel observed "you have plenty of evidence to signify that there was dissension." (Exh. 21, p. 88). No prejudice to Burke resulted, as the Panel was already aware of the fact he was attempting to further prove.

■ At the trial before the court, Burke testified that if, instead of refus-

ing to admit the petition, the Panel had granted a continuance, Burke's fellow members would have been able to attend the meeting and that their presence would have lent some kind of moral support or suasion to Burke's position before the Panel (Supp.Tr. 99–103 [one volume of the judicial trial record is not paginated in sequence and is cited Supp.Tr. as opposed to the consecutively numbered volumes which are cited Tr.]). This court finds that no claim can be made that the Panel would have been enlightened further as to relevant facts by the attendance of Burke's friends and fellow members. No prejudice was caused by their absence. A trial by crowd pressure is not what Section 411(a) (5) seeks to insure. The court notes that no continuance was requested following the ruling on the petition.

Finally, even when the union provisions stating offenses are strictly construed, *cf.*, Allen v. International Alliance of Theatrical, Stage Employees and Moving Picture Machine Operators, 338 F.2d 309, 316 (5th Cir. 1964), this court cannot say that the union trial did not afford Burke the chance to fully develop relevant evidence that would constitute a defense to the charges. No continuance referred to before this court would have produced additional, noncumulative, relevant evidence.

### 4. FINDINGS SUPPORTED BY EVIDENCE

■■ The findings of the Trial Panel, as adopted by the International Executive Council, must be upheld if any evidence was introduced at the union trial which supported the charges against Burke and the finding of guilty on all charges. The union trial received evidence that Burke took the contracts, that he was not authorized to or supposed to take the contracts, and that he took the contracts with a belief he was acting in the best interests of the members of Local 6. That evidence, even when the union offenses are strictly construed, *cf.*, Allen v. International Alliance of Theatrical, Stage Employees and

Moving Picture Machine Operators, *supra*, certainly can be said to constitute a violation of Section 1(f) (dishonorable act), of Section 1(g) (misappropriation of union property), of Section 1(k) (act inconsistent with duties of union member), and of Section 1(*l*) (conduct irresponsible toward International). However, this court has perused the transcript of the union trial and finds that the record is absolutely barren of one shred of evidence of the consequences or repercussions of Burke's conduct which could be said to be detrimental to the best interests of the International or Local 6. It may very well be that there may have been some such effect resulting from Burke's conduct. But no such evidence was presented to the Trial Panel. This court finds and concludes that the International's finding that Burke was guilty of violating Section 1(e) of the International's Constitution is not supported by any evidence.

■ That conclusion, however, is not the end of the inquiry, for the other charges were supported by evidence. Had plaintiff been charged only with a violation of Section 1(e), this court would have to reinstate him and set aside the union disciplinary action. But no reinstatement is required merely because one of several charges is not supported by evidence when the charges that are supported by evidence justify the action taken by the union. Therefore, the question remains whether the penalty imposed was justified by the violations of the other provisions of the International Constitution. That question is discussed below.

■ Plaintiff also contends that he was entitled to separate findings on each charge. This court does not think that Section 411(a) (5) sought to guarantee all the procedures of a court of law. It appears obvious that the union thought Burke guilty of each violation charged (Exh. 25, p. 3 [" 'Guilty' on all charges"]). That the union did not write the word "guilty" five times did not deprive Burke of a fair hearing.

### 5. MOTIVATION OF THE UNION'S ACTION

Plaintiff contends that his trial was motivated by the personal animosity of his accuser, International Vice-President Precht, and by differences between himself and Precht over their views as to what action Local 6 should have taken on several issues. At the trial before the court, Burke did prove a history of considerable friction between himself and Precht, some of which is as follows: In 1963, Precht was assigned, as Vice-President for the geographic area embracing Local 6, to observe its meetings and activity because of reports of disorderly and improper meetings (Tr. 831; Exh. AB). Burke criticized Precht and on November 2, 1963, Burke suggested that Local 6 close its membership books, a move which Precht contested (Tr. 172–73, 295–300). Precht recommended that Local 6 be considered for trusteeship (Tr. 842–44, 875–76). On December 7, 1963, Burke proposed the formation of a small screening committee to determine who was eligible for certain high paying work, and Precht opposed him (Tr. 299–300, 686–92). On December 27, 1963, a hearing was scheduled to determine whether Local 6 should be placed under trusteeship (Exh. 27; Exh. AD). Local 6 was placed under supervision (Tr. 306–08; Exh. AE). Local 6 was ordered to cease certain activities and services to members with which Burke had become identified as a prime supporter (Tr. 675; Supp.Tr. 5–9; Exh. AE). In May, 1965, Burke and Precht had a fist fight outside a San Francisco restaurant (Tr. 292–93, 853–55, 1007).

Granting that the foregoing vignette is true, Burke failed to prove any animosity or bias on the part of the Trial Panel or Executive Council. He never established that persons other than Precht were involved in the personal "feud" or that the Trial Panel or Executive Council was aware of it or took it into account in making its decisions. The evidence does demonstrate that two of the Council's members disqualified them-

selves from participating. One was Precht (Tr. 851–52; Exh. H). The other was John Stender, who helped negotiate the agreement which Burke took from the printer (Exh. E, F, H).

▉ Nothing in the transcript of the union hearing indicates that the Trial Panel was informed of or knew about Burke's prior history of what Precht considered bad conduct. The formal charges only referred to the incident of October 8, 1965, the taking of the agreements (Exh. 16). As long as an accused receives a fair trial and an impartial determination of guilt on specified charges, the motive of the accuser is irrelevant. *Cf.*, Pittman v. United Brotherhood of Carpenters and Joiners of America, 251 F.Supp. 323 (M.D.Fla. 1966). That Precht was motivated to file his charges because of his prior experience with Burke is not alone a deprivation of a fair trial. Had the Panel considered Burke's prior record of opposition to Precht in its determination of guilt or sentence, Burke would be able to assert that such action deters a union member's right to free speech as guaranteed by Section 411(a) (2). But the Panel was not shown to have been aware of the record or to have considered it in its findings.

▉ Furthermore, the mere fact, without more, that plaintiff's accuser was an influential union official does not support a holding that plaintiff was denied a fair hearing. Cornelio v. Metropolitan District Council of Philadelphia and Vicinity, United Brotherhood of Carpenters and Joiners of America, 243 F.Supp. 126 (E.D.Pa.1965), aff'd, 358 F.2d 728 (3d Cir. 1966). A reading of the record of the Trial Panel's proceedings shows that the Panel ruled against Precht on several occasions and afforded Burke every opportunity to present his case. No evidence adduced at trial indicated that the proceeding was anything but fair and sincere. It was not shown to be a sham or kangaroo court.

## 6. DETERMINING GUILT

▉ Russell Berg, President of the International, wrote a letter to members of the Executive Council (Exh. H)*, which accompanied the Trial Panel's recommendations and stated that Berg was "in full accord" with the Panel. Plaintiff contends that said letter constituted

---

* The letter reads as follows:

To the International Executive Council:

Attached is the complete record of charges preferred against John J. Burke, Register #597186, Assistant Business Manager, Lodge #6, · San Francisco, California by James Precht, Register #467063. Also attached is the report of the Panel of the Executive Council which conducted the hearing, composed of Vice-President Donald G. Whan and Vice-President Charles F. Moran and their findings and recommendations, with which I am in full accord.

I request that you review the record very carefully and forward your vote on this Document at your earliest possible convenience, as in accordance with the Constitution, there is a ten day limitation from the time the members of the Executive Council receive the transcript of the hearing to the time that Brother John J. Burke has to be notified of the Council action in the case.

A "Yes" vote will be to concur in the recommendation of the Council Panel: " * * * that Brother Burke be found guilty on all charges and that he be suspended from membership in the International Brotherhood and from all rights and privileges pertaining thereto."

This, of course, is in effect expulsion of John J. Burke from the International Brotherhood.

A "No" vote will mean that John J. Burke will not be found guilty of the charges and no penalty assessed. Any other vote will have to be fully explained.

Fraternally,
/s/ Russell K. Berg
Russell K. Berg
International President

P.S. This Document is not being sent to Vice-President James Precht and Vice-President John Stender for vote because of their involvement and interest in the matter.

**1354**

pressure on the members of the Council which deprived him of a fair and impartial determination of his guilt. The letter suggests a careful consideration of the Panel's recommendations and review of the record of the union trial and explains the effect of "yes" and "no" votes. It does not request an explanation of a "no" vote as plaintiff suggested. It requests the explanation of any vote other than "yes" or "no". Considering the entire letter, the court finds that it would not exert undue influence on members of the Executive Council. The court observes that plaintiff did not call as witnesses any of the Executive Council members to ask them what the actual effect of the letter was, but left the court to speculate on the probable effect of the letter. The court does not think it coercive.

## 7. PENALTY

 The court cannot say, as a matter of law, that the penalty imposed on John Burke was unlawful. It amounted to expulsion. Whatever the court might have done with the record presented to the Trial Panel, it is not for the court to substitute its judgment for that of the union where the union action is not clearly unfair. Burke's acts and philosophy were presented to the Panel. People have been sent to jail for similar acts. This court cannot say that the penalty is so gross, arbitrary or unfair that it constitutes a violation of Section 411(a) (5) or due process.

## CONCLUSION

Much of the evidence adduced at trial before this court was an after-the-fact trial of the personalities involved in the disputes which led to the events of October 8, 1965, and the International's action against John Burke. Much of it was irrelevant. Little or no evidence was directed at the crucial issues of the case pertaining to the fairness of the trial and the knowledge and intentions of the members of the union trial body.

The court has had to draw conclusions and inferences as best it could.

The action of the International will not be interfered with by this court on the evidence presented. Judgment for defendants.