**Clyde KUEBLER, Plaintiff-Appellant,**

v.

**CLEVELAND LITHOGRAPHERS AND PHOTOENGRAVERS UNION LOCAL 24–P et al., Defendants-Appellees.**

No. 72–1490.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1972.

Decided Feb. 6, 1973.

Richard H. Siegel, Cleveland, Ohio, for plaintiff-appellant.

Ernest C. T. Santora, Victor Strimbu, of Baker, Hostetler & Patterson, Stanley D. Gottsegen, of Gottsegen, Tucker &

Blake, Cleveland, Ohio, for defendants-appellees.

Before CELEBREZZE, McCREE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

This case concerns the "Bill of Rights" of union members contained in the Labor-Management Reporting and Disclosure Act, Section 101, 29 U.S.C. § 411 (the Act). The facts require an application of sub-sections (a)(2) and (a)(5).[1]

Clyde Kuebler (Appellant) had been a member in good standing of Cleveland Lithographers and Photoengravers Union Local 24–P (Union) from the time of his employment by Art Gravure Corporation in 1967. Such membership was a requirement of the union shop agreement between the Union and Art Gravure. In the summer of 1970 the Union called a strike against Art Gravure and Appellant ceased working for his employer and began walking the picket line. Some several months after the strike began, Appellant met with twelve or thirteen other striking employees of Art Gravure in the home of one of them.

The purpose of the meeting was to discuss "the widening gap between the two negotiating committees, and try to straighten this thing out to where we could get back to work" according to Appellant's undisputed testimony. The meeting was not secret, and at its end a three-man committee was appointed to communicate the views of the meeting to the union negotiating committee. Neither Appellant nor any other union member who attended the meeting ever contacted a representative of Art Gravure. After the meeting Appellant returned to the picket line until the strike was over.

Some time after the strike had ended Appellant was charged by the Executive Board of the Union with attending "a meeting which was held for the purpose of undermining the Union Negotiating Committee", and was tried before a Trial Board of the local. He was found guilty and his punishment was fixed at three months suspension from the Union and a fine of $2,000.00. In accordance with the constitution of the Union, Kuebler filed a notice of appeal to the membership and requested that certain information be furnished him or his attorney to be used in preparation of the appeal. The items requested included copies of the charges against him, showing specific offenses alleged and supporting facts; the names of persons included on the Executive Board which had tried him; a copy of the written decision of that tribunal with a showing of how each member had voted and a copy of the transcript of evidence and proceedings at his trial.

Prior to his trial Appellant had requested the right to be represented by an attorney and this request was denied. In connection with his appeal to the Union this request was renewed and the Secretary-Treasurer of the local respond-

---

1. § 411. *Bill of rights; constitution and bylaws of labor organizations (a)*

\* \* \* \* \*

(2) *Freedom of speech and assembly.*—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

\* \* \* \* \*

(5) *Safeguards against improper disciplinary action.*—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

ed that outside attorneys "are not permitted."

Kuebler next undertook an appeal to the International Council of the Union, as provided by its constitution, and immediately repeated his request for documents and information needed to prepare the appeal. Although the request was contained in three separate letters to an officer of the International Council, it was completely ignored so far as the record shows. The only communication from the International Council was a letter informing Appellant that his case had been carefully considered and denied, first, because the appeal was not timely filed; and, second, because his objections did not warrant sustaining the appeal.

Kuebler then brought suit against the Union for infringement of his rights pursuant to 29 U.S.C. § 412. He sought an injunction against all further disciplinary proceedings and sanctions and a declaration that certain provisions of the Union constitution are illegal and unenforceable. As further relief he demanded that all proceedings against him be declared void. The matter was submitted to the District Court on Kuebler's motion for a temporary restraining order supported by a number of exhibits and testimony of the Plaintiff. The court found that Kuebler was afforded a full and fair hearing and that the burden was on him to prove that the Union had acted to deprive him of constitutional rights. In his opinion the District Judge said the court would not substitute "its judgment for that of the union in matters of internal union discipline without

an affirmative showing of arbitrary and discriminatory action by the union or its officers". The complaint was dismissed and this appeal followed.

The District Court relied principally on Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971), in finding that Appellant was not denied any rights guaranteed to him by law. That decision determined that conduct which has not been specifically forbidden by union rules may nevertheless be the basis for charges by the union against a member. The Supreme Court held that the provision of § 411(a)(5) requiring written charges does not authorize courts to determine precisely what conduct may be the basis of discipline by a union of its members. It should be pointed out that *Hardeman* did not involve freedom of speech or assembly, but was concerned with an assault on a union official by a member. Here the charge against Appellant is simply that his attendance at a meeting with other union members was for the purpose of undermining the Union Negotiating Committee.[2] No evidence appears in the record of any statements or actions of Appellant and no specific acts were charged against him other than his attendance at the meeting. Provisions of Article III of the local constitution and Article XVIII of the International Constitution and Laws were cited in support of the charges.[3]

■ The question to be decided is whether the Union may interpret and enforce its rules so as to discipline a member for meeting with other members and expressing dissatisfaction with the

2. Letter, Mar. 19, 1971, Charles G. Thomson to Executive Board of Local 24–P

March 19, 1971

To the Executive Board of
Cleveland L P I U Local No. 24–P
Gentlemen :
CHARGES AGAINST BROTHER CLYDE R. KUEBLER DUES BOOK NO. 96730–P, BRANCH ETCHER
The Officers of Cleveland L P I U Local No. 24–P, herewith file Charges against Brother Clyde R. Kuebler, as follows:

During the Strike at Art Gravure Corporation, where Brother Kuebler is employed, he attended a meeting which was held for the purpose of undermining the Union Negotiating Committee.

3. The cited provisions require the faithful discharge of the duties and obligations of membership in the Union and agreement not to knowingly undermine the wage and work standards of the Union nor to abuse one's membership by any act detrimental to the Union or other members.

way in which negotiations for settlement of a strike are proceeding. In reaching our conclusion, we consider a portion of the legislative history of the "Bill of Rights". Senator McClellan of Arkansas was one of the principal advocates of the legislation and explained the Freedom of Assembly provisions as originally proposed (Section 411(a)(2)) as follows:

"That gives union members the right to assemble in groups, if they like, and to visit their neighbors and to discuss union affairs, and to say what they think, or perhaps discuss what should be done to straighten out union affairs, or perhaps discuss the promotion of a union movement, or perhaps a policy in which they believe. They would be able to do all of that without being punished for doing it, as is actually happening today."

105 Cong.Rec. 6477 (86th Congress, April 22, 1959).

We hold that it was a violation of 29 U.S.C. §§ 411(a)(2) and (a)(5) for the Union to discipline Appellant for attending the meeting with other members of his union where progress in negotiation of a strike settlement were discussed. Appellant was guaranteed the right to so meet and discuss without the threat of punishment by the Union. In the District Court the case was submitted for a decision on the basis of an affidavit and testimony of Appellant and some exhibits. The Union filed no answer and offered no evidence. The court held that the burden of proof was on Appellant to prove that the Union acted to deprive him of constitutional rights, and that "bare allegations of infringement are insufficient to satisfy that burden". Yet, the trial court accepted the bare statement that such attendance was a violation of Kuebler's duty of loyalty to the Union. This was error in view of the provisions of the Act which specifically guarantee to each union member the right to assemble freely with other members.

▆▆ The affidavit which Kuebler filed with his motion for a temporary restraining order went far beyond bare allegations of unconstitutional acts. Detailed factual statements were included and since they were uncontradicted either by pleading or counter-affidavit, must be taken as true. In addition, Kuebler testified and filed a number of exhibits. It is our conclusion that Appellant made out a prima facie case of unlawful acts by the Union and that the Union failed in its burden to go forward with proof to justify its disciplinary actions against its member as being within the limiting provisions of Section 411(a)(2) concerning the continuing right of a union to have reasonable rules with respect to the responsibility of union members toward the organization as an institution; and to members not engaging in conduct that would interfere with the union's performance of its legal or contractual obligations. Fulton Lodge No. 2, International Association of Machinists, etc. v. Nix, 415 F.2d 212, 218 (5th Cir. 1969), cert. denied 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). Absent such a showing by the Union, Appellant was entitled to injunctive relief. Salzhandler v. Caputo, 316 F.2d 445 (2nd Cir. 1963), cert. denied 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963).

▆▆ The Union relies on the provisions of its constitution and that of the International Union as proof that the charges against Kuebler were properly brought and that the finding of guilt was sustained. While on their face these instruments appear to provide an orderly procedure for dealing with trials and appeals, nevertheless, as applied in this case, they have resulted in the denial of substantial rights of Appellant. While the Union may choose to describe offenses in general terms such as "undermining wage and work standards", it is not free to apply its rules in such a way as to violate the rights which Congress has secured to every member of a labor organization. Section 101(a)(5) of the Act [29 U.S.C. § 411(a)(5)] prohibits the disciplining of any member by a union unless he has been "afforded a full

and fair hearing". We construe this to mean that traditional concepts of due process should apply. Falcone v. Dantinne, 420 F.2d 1157 (3rd Cir. 1969).

██ ██ The refusal of the local and international councils of the union to supply Appellant with the requested documents and information denied him a full and fair hearing on appeal. He simply had no real opportunity to present his case to a reviewing body. In effect his trial before a Board whose membership was never divulged to him, but which is conceded in brief to have been made up of the same parties who investigated the charges against him, was his only hearing. Because of the refusal of the union authorities to supply him with information in their sole possession, Appellant's right of appeal within the union structure was illusory. Thus Appellant's only hearing was before a tribunal which lacked the impartiality of a court and he was denied the opportunity for an effective appeal. He was not afforded a full and fair hearing, and the proceedings against him were void. Accordingly he is entitled to reinstatement to full membership in the Union, and to an injunction against further disciplinary action and sanctions by the Union.

To permit a union to punish its members for meeting and discussing affairs of the union would be to deny the very purpose of the Bill of Rights provisions of the Act. It was a concern for greater democracy within unions which originally prompted Congress to enact these provisions. Since no democracy can flourish where freedom of speech and assembly are hindered by threats of reprisal, the actions of the Appellee-Union in this case were calculated to frustrate the effectiveness of a clearly stated national policy. We must determine the validity of the provisions of the Union's constitution under which Appellant was charged, tried and convicted in the light of these considerations. In the present case many of the provisions were ignored and this resulted in the denial of a full and fair hearing to Appellant. No facts in support of the charges were detailed as required by the constitution. No written decision containing the findings of the Trial Board was served on Appellant—only a notice that he had been guilty and of the punishment. All of these steps were specifically required by the constitution. Though the appeal to the International Council was to be decided on the basis of the record made before the Trial Board, Appellant was never furnished a copy of that record for use in preparing his appeal.

██ From the record it does not appear that the Union has engaged in repeated violations of the rights of its members as was the case in Semancik v. United Mine Workers of America District #5, 466 F.2d 144 (3rd Cir. 1972). For this reason we decline to hold the procedural provisions of the Union's constitution void. However, a consistent policy of illegal application of its constitutional procedures by the Union would require such a holding by the court. As was pointed out in *Semancik, supra,* when freedom of speech is unreasonably affected by such a provision, either on its face, or by its application, it must be declared void.

Upon remand the District Court will enter an order directing the Union to set aside the conviction of Appellant and to make him whole for all earnings which he has lost as a result of the Union action against him. The order will also permanently enjoin the Union from taking any steps to punish or retaliate against Appellant either for his exercise of the right of freedom of speech and assembly or other rights guaranteed him by law, including the prosecution of this action. It will further provide that all proceedings heretofore taken against Appellant be expunged from the record and that he be reinstated to full membership. The Defendant-Appellee will pay the cost.

The judgment of the District Court is reversed for entry of orders as directed herein.