Mark TINCHER et al.,
Plaintiffs-Appellees

v.

Harry PIASECKI, President, United Steelworkers of America, District 31, Local Union No. 1014 et al., Defendants-Appellants.

No. 74–1446.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 1974.

Decided July 10, 1975.

Gilbert Feldman, Chicago, Ill., for defendants-appellants.

Harold Abrahamson, Hammond, Ind., for plaintiffs-appellees.

Before BARNES, Senior Circuit Judge,* and PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

The question presented by this appeal is whether the union has provided certain members with a "full and fair hear-

ing" in a union disciplinary proceeding, as required by § 101(a)(5) of the Labor-Management Reporting and Disclosure Act (Landrum-Griffin, hereinafter LMRDA), 29 U.S.C. § 411(a)(5).[1]

### I

The plaintiffs are all members of the defendant Local Union No. 1014, United Steelworkers of America, AFL–CIO (Local 1014). The defendants are Local 1014, certain officers of the Local, and the United Steelworkers of America.

On October 29, 1971, the plaintiff and other members of Local 1014 filed charges against Peter Yesh, financial secretary of Local 1014, charging Yesh with certain improprieties in connection with his duties as a union officer. After hearings on these charges, the trial committee issued its report and recommendations, finding Yesh innocent of all charges. This report was adopted by the Local's membership.

Subsequently, on January 21, 1972, Yesh preferred charges against the plaintiffs for alleged violations of the Local's bylaws. A trial committee (Trial Committee I) was appointed and held hearings in February and March of 1972.[2] On March 27, 1972, the membership adopted the trial committee's report and recommendations finding the plaintiffs guilty as charged.

Alleging violations of § 101(a)(5) of the LMRDA, the plaintiffs filed a complaint in the district court on May 2, 1972. On May 12, 1972, the district court, with the consent of both parties, entered an order finding that the charges brought by Yesh against the plaintiffs lacked the specificity required

---

* Senior Circuit Judge Stanley N. Barnes of the Ninth Circuit is sitting by designation.

1. 29 U.S.C. § 411(a)(5) provides:

"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a

reasonable time to prepare his defense; (C) afforded a full and fair hearing."

2. No member of the 1971 trial committee which had heard the plaintiffs' charges against Yesh served on Trial Committee I. Although the plaintiffs challenged the actions of the 1971 trial committee at various times in the subsequent union proceedings, the actions of the 1971 trial committee are not challenged in the present appeal.

by § 101(a)(5). The findings made and penalties imposed under those charges were voluntarily set aside with leave to the defendants to proceed with amended and more specific charges.

Thereafter, on May 13, 1972, Yesh filed amended charges against the plaintiffs. These charges alleged, *inter alia,* that the plaintiffs had made accusations of a slanderous nature against Yesh, had fraudulently obtained signatures of other members in connection with the 1971 charges against Yesh, and had refused to cooperate with the 1971 trial committee which heard the charges against Yesh. The trial committee appointed to hear these new charges against the plaintiffs (Trial Committee II) consisted of the same persons who had served on Trial Committee I.

On June 13, 1972, the plaintiffs filed an application for a preliminary injunction in the district court to bar the scheduled meeting of Trial Committee II. The district court, on June 15, 1972, enjoined the defendants from trying the plaintiffs on that part of Yesh's amended charges which alleged that the plaintiffs had slandered Yesh on the ground that the alleged statements were protected under the free speech provisions of Title I of the LMRDA.

Trial Committee II conducted hearings on the remaining amended charges in June 1972. On July 17, 1972, Trial Committee II delivered its report and recommendations, finding all of the plaintiffs guilty of "refusal to cooperate" and seven of the plaintiffs guilty of making false representations to procure signatures on the charges filed against Yesh in 1971. The recommended penalty for conviction on both charges was suspension from holding office and no voice or right of appeal for a period of four years; the recommended penalty for convictions on a single charge was the same penalty for a period of three years. The report and recommendations of Trial Committee II were approved by the Local membership.

The plaintiffs appealed these convictions to the International Union. After various hearings, the International Executive Board, in February of 1973, reversed the convictions on the "false representation" charge but sustained the convictions on the "refusal to cooperate" charge. The penalty imposed was eventually reduced to loss of good standing for 18 months.

On March 22, 1973, the plaintiffs filed a supplemental complaint in the district court and thereafter moved for a "temporary injunction" to bar the enforcement of the penalties imposed upon them. The defendants moved to dismiss the supplemental complaint for failure to state a claim upon which relief could be granted.

After a hearing, the district court, upon consideration of "the evidence submitted . . . , the affidavits, and other materials on file and the briefs of the parties" concluded that the plaintiffs had shown a reasonable probability of success on the merits with respect to their claim that they had been denied a full and fair hearing in the union proceedings and, on June 21, 1973, issued a preliminary injunction enjoining the enforcement of the penalties imposed upon the plaintiffs. The defendants' motion to dismiss was treated as a motion for summary judgment and denied.

The district court based its decision on two grounds: (1) one of the plaintiffs, Daniel Conley, had, in April of 1972, filed charges against Jack Parton, chairman of both Trial Committee I and Trial Committee II, and these charges were pending at the time Trial Committee II held its hearings and were mentioned by Conley to Parton during these hearings; (2) the admission by Parton that the members of Trial Committee II, while serving on that committee, had considered the information they heard while they were members of Trial Committee I.

With the consent of the parties, the district court, on March 25, 1974, converted the preliminary injunction into

a permanent injunction. The defendants appeal from this final order.[3]

## II

■■ Although there is a general national policy against judicial interference in the internal affairs of unions, "that general policy is subject to important exception in specific areas in which Congress has found that the interests of individual members need special protection against the danger of overreaching by entrenched union leadership." *Rota v. Brotherhood of Railway Airline & Steamship Clerks*, 489 F.2d 998, 1003 (7th Cir. 1973), *cert. denied,* 414 U.S. 1144, 94 S.Ct. 896, 39 L.Ed.2d 99 (1974). In the LMRDA, Congress has sought "to protect union members in their relationship to the union by adopting measures to insure the provision of democratic processes in the conduct of union affairs and procedural due process to members subjected to discipline." *NLRB v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 194, 87 S.Ct. 2001, 2014, 18 L.Ed.2d 1123 (1967).

■ Section 101(a)(5) of the Act prohibits the disciplining of any member by a union unless the member is afforded "a full and fair hearing." While the union member need not necessarily be provided with the full panoply of procedural safeguards found in criminal proceedings, the fundamental and traditional concepts of due process do apply to the union disciplinary hearing. *Kuebler v. Cleveland Lithographers Local 24–P,* 473 F.2d 359, 364 (6th Cir. 1973); *Falcone v. Dantinne,* 420 F.2d 1157, 1165 (3d Cir. 1969); *Parks v. International Brotherhood of Electrical Workers,* 314 F.2d 886, 912 (4th Cir. 1963), *cert. denied,* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142. An essential element of a full and fair hearing is an impartial tribunal which arrives at its decision on the basis of evidence which the accused has an opportunity to confront and rebut. *Kuebler, supra* at 364; *Falcone, supra* at 1166; *Parks, supra* at 912; *cf.* the district court holding summarized in *Lanigan v. Local 9, International Brotherhood of Electrical Workers,* 327 F.2d 627, 628 (7th Cir. 1964), *cert. denied,* 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747.

### Conley Charges

On April 14, 1972, after the decision of Trial Committee I but before the filing of the amended Yesh charges or the designation of Trial Committee II, one of the plaintiffs, Daniel Conley, filed charges against Jack Parton, the chairman of both Trial Committee I and Trial Committee II. The Local Executive Board initially declared the Conley charges "invalid" but later, at the direction of the International Union, processed the charges. At the time of the hearings before Trial Committee II, Conley's re-filed charges against Parton were pending.

According to Conley's affidavit, he personally asked that Parton disqualify himself from serving on Trial Committee I because of Conley's pending charges

---

**3.** The plaintiffs argue that the defendants waived their right to appeal by failing to appeal the order granting the preliminary injunction. This contention is frivolous. Although the preliminary injunction was appealable as of right under 28 U.S.C. § 1292(a)(1), the defendants' failure to appeal did not waive their right to appeal from the final order. An interlocutory appeal is permissive rather than mandatory and "[t]he aggrieved party may, therefore, await the final determination of the case and upon appeal therefrom raise all questions involved in the case." *Victor Talking Mach. Co. v. George,* 105 F.2d 697, 699 (3d Cir. 1939), *cert. denied,* 308 U.S. 611, 60 S.Ct. 176, 84 L.Ed. 511. See also *Caradelis v. Refineria Panama, S.A.,* 384 F.2d 589, 591 n. 1 (5th Cir. 1967); *Gloria Steamship Co. v. Smith,* 376 F.2d 46, 47 (5th Cir. 1967); 11 Wright & Miller, Federal Practice & Procedure § 2962 at 628 (1973).

The plaintiffs also argue, and we deem it equally without merit, that "the proper posture of the case insofar as the scope of review by this Court is concerned, is the same as if an appeal had been prosecuted from the June 21, 1973 Preliminary Injunction." That from which the appeal was taken was clearly a final judgment within the meaning of 28 U.S.C. § 1291.

against Parton. Although Parton claimed, in his affidavit, that he was unaware, at the time he was chairman of Trial Committee II, that Conley had made charges against him, Parton, in the same affidavit, admitted that, during the hearing of Trial Committee II, Conley mentioned the charges to him.[4]

We agree with the district court that, as a matter of fundamental due process, it is inherently improper for a person who has been charged by an accused in a collateral proceeding to participate as a committee member in the accused's disciplinary hearing.[5] As the Supreme Court recently noted:

"[V]arious situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome *and in which he has been the target of personal abuse or criticism from the party before him.*" *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). (Footnotes omitted and emphasis added.)

That Parton claimed in his affidavit that the pending Conley charge had no effect on his decision as a member of Trial Committee II is immaterial. The circumstances themselves, by presenting a significant danger of bias, created the inherent impropriety.[6]

The defendants contend, however, that the plaintiffs' failure to raise the issue of the Conley charge in the union trial and appeal proceedings constitutes a waiver. We disagree. Throughout the hearings before Trial Committee II and the subsequent union appellate process, the plaintiffs repeatedly contended that the trial committee was not impartial. Conley, moreover, expressly mentioned the charges to Parton during the hearings of Trial Committee II. Furthermore, even if the plaintiffs had failed to raise the issue in the union proceedings, that failure "should not be construed as a waiver of such vital safeguard as the guaranty of an impartial tribunal." *Falcone, supra* at 1162.

The defendants also argue that a decision in favor of the plaintiffs "will spell the end of intra-union trial machinery" since an accused could continually disqualify trial committee members by filing charges against them. We agree that a member who brought charges against committee members simply to disqualify them from serving as such might not be entitled to challenge the trial committee on the basis of such charges. The record before us, however, does not present such a case. Conley's charges against Parton were filed on April 12, 1972, after Trial Committee I's report and recommendations had been

4. Parton was formally notified by the union of the Conley charge on August 15, 1972, after Trial Committee II had made its report and recommendations. We need not decide whether it is, as the plaintiffs contend, "inconceivable" that Parton who, according to the plaintiffs, was a Grievance Committeeman and spent more time in the Local 1014 office than he did in the United States Steel plant, was unaware of the existence of the charge prior of formal notification.

5. *Burke v. International Brotherhood of Boilermakers,* 302 F.Supp. 1345 (N.D.Cal.1967), aff'd, 417 F.2d 1063 (9th Cir. 1969), upon which the defendants rely, does not support their position. In *Burke*, the district court held that a union member was not deprived of a full and fair hearing simply because the accusing member, who was not a member of the trial committee, may have been motivated by personal animosity in filing the charges.

6. Due to our decision concerning the consideration by Trial Committee II of the report of Trial Committee I, an issue which affects all of the plaintiffs, we need not decide whether the impropriety stemming from Parton's failure to disqualify himself affected all of the plaintiffs or only Conley.

approved by the membership. The district court's order setting aside the findings of Trial Committee I was not entered until May 12, 1972. Yesh's amended charges against the plaintiffs were filed on May 13, 1972, and Trial Committee II was designated later that month. Since Conley's charges against Parton preceded the refiling of Yesh's charges and the designation of Trial Committee II, it is clear that Conley was not using the charges as a means of disqualifying Parton from serving on the second trial committee.

### Consideration of the Record of Trial Committee I

■ According to Conley's affidavit, the report of Trial Committee I was read into the record at the hearings before Trial Committee II. In his deposition, Parton stated that he could not remember whether the report of Trial Committee I was made part of the official record of Trial Committee II but admitted that the report of the prior trial committee was considered because the members of Trial Committee II could not "close their minds to it."

Irrespective of whether the report of Trial Committee I was read into the record, the consideration of it by the second trial committee was clearly improper since the findings of Trial Committee I had earlier been vacated by the district court. The continued consideration on the prior invalid decision deprived the plaintiffs of an impartial, openminded tribunal.[7]

Affirmed.

---

7. The defendants point out that in its order of June 15, 1972, the district court, in response to the plaintiffs' challenge to the reappointment of the Parton trial committee, ruled that the reselection was in accordance with the Local's bylaws. Assuming *arguendo* that it was not improper for the same trial committee to hear the amended charges, see *Falcone, supra* at 1163 n. 8, the defect here was the consideration by the committee of its earlier report, which had been vacated by a district court, in reaching its decision in the second trial of the plaintiffs.