Dave HAAS; Bill Brooke; Robert Sandoval; and Robert Williams, Plaintiffs,

v.

FREIGHT, CONSTRUCTION, GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS, LOCAL NO. 287; Ed Quintal, Ed De Brock; George Netto; and Lee Scoggins, Defendants.

No. C 89–20531 WAI.

United States District Court, N.D. California.

Sept. 27, 1993.

Christopher Katzenbach, San Francisco, CA, for plaintiffs.

Kenneth C. Absalom, Beeson, Tayer & Bodine, San Francisco, CA, for defendants.

*ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING IT IN PART AND DENYING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT*

AGUILAR, District Judge.

Plaintiffs' motion for partial summary judgment and defendants cross motion for summary judgment came on regularly for hearing on August 12, 1993, before the Honorable Robert P. Aguilar. All parties appeared represented by counsel. Based on the pleadings, the submitted declarations and evidence, oral argument, the court records and good cause appearing therefor, the court GRANTS plaintiffs' motion in part and DENIES plaintiffs motion in part. The court DENIES defendants' cross motion for summary judgment.

I

FACTUAL BACKGROUND

This case arises out of a union dispute. During their membership in the International Brotherhood of Teamsters Local 287 Union ("Local 287"), plaintiffs became dissatisfied with the performance of the secretary-treasurer, Mario Gullo, and requested an accounting.

In order to investigate Gullo's conduct, the Executive Board, then comprised of plaintiffs Bill Brooke, Robert Sandoval, Robert Williams, and non-plaintiff Barton Wolin, adopted a resolution authorizing investigation of supplemental dues and related matters by attorney Fernando Hernandez.

Hernandez started an investigation of Local 287 for its charging of supplemental dues and instituted a lawsuit for an accounting of union finances against Gullo, the then secretary-treasurer.

Before the lawsuit had significantly advanced, an election was held and a reversal of power occurred within the Executive Board. New union officers were elected. Plaintiff Haas defeated Gullo, and Haas became the new secretary-treasurer. Gullo's supporters (Quintal, De Brock, Netto and Scoggins), however, were elected to a majority of the Executive Board. Shortly thereafter, Gullo

filed a protest with the new Executive Board. He claimed that the plaintiffs hired the attorney to investigate his handling of the union's finances simply to gain votes for Haas, the alternate candidate for secretary-treasurer.

On March 2, 1989, the union Joint Council convened to hear Gullo's election protest. The Joint Council set aside the election after finding several irregularities. The decision was appealed to the General Executive Board. The Executive Board, in turn, affirmed the Joint Council's decision.

Shortly after the re-run election, attorney Hernandez was discharged by the newly structured Executive Board.

### A. *First Union Trial of Plaintiffs on Gullo's Charges*

A hearing on the internal charges filed by defendant Gullo was scheduled for August 16, 1989. On August 15, 1989, plaintiff Haas, who had power to cancel the hearing under the bylaws of the union, canceled the trial hearing. None of the plaintiffs attended the hearing because they assumed it to be canceled. Nonetheless, plaintiffs were tried and convicted in absentia.

Four of plaintiffs' political opponents, the defendants, sat as judges in this hearing. Plaintiffs were convicted.

As a result of their convictions, plaintiffs were removed from office, fined $5,000.00 and ordered to reimburse the union for the attorneys' fees accrued by Hernandez. Plaintiffs filed an application for a stay of discipline pending appeal with the International Board of Teamsters ("IBT") General President. The stay was granted. Plaintiffs were restored to office.

A re-run election to clean up the alleged campaign irregularities (*i.e.*, the hiring of attorney Hernandez to investigate Gullo) was held. Plaintiffs were defeated. Gullo was restored to his secretary-treasurer role.

Plaintiffs filed timely protest over the results of the re-run election with the Joint Council. Plaintiffs alleged that the convictions on Gullo's charges and their resulting brief removal from office were improperly used by Gullo, Quintal, De Brock, Netto and Scoggins in the re-run election campaign.

The Joint Council determined that the revelation of the plaintiffs' brief removal from office was not prejudicial to the result of the re-run election. The Joint Council upheld the election results. This finding was affirmed by the IBT Executive Board and the Secretary of Labor.

### B. *Appeal of Convictions*

Plaintiffs then appealed their convictions on Gullo's charges to the Joint Council. The appeal was heard by the same Joint Council that had previously determined the first election invalid due to campaign irregularities related to the hiring of attorney Hernandez. The appeal was supposed to be a de novo trial on the charges so as to cure any bias which may have been present in the first trial.

The Joint Council reversed plaintiff Haas' conviction, but it affirmed the convictions of plaintiffs Brooke, Williams and Sandoval.

Plaintiffs then instituted this action alleging that defendants violated their union rights to free speech and assembly; their union right to initiate lawsuits; and their due process rights respecting union disciplinary actions.

## II

## DISCUSSION

### A. *Standard of Review*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if no factual issues exist for trial. To survive a motion for summary judgment, the non-moving party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In addition, the non-moving party must demonstrate that the factual dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

### B. Defendants' Cross Motion for Summary Judgment

■ Can Plaintiffs recover damages caused by their defeat in the 1989 re-run election?

The legal issue to address in determining whether plaintiffs are entitled to recover damages, in this court, caused by their defeat in the 1989 re-run election is whether Title IV of the Labor Management Reporting and Disclosure Act ("LMRDA") deprives this court of jurisdiction. According to Title IV, this court has no jurisdiction over a private action which challenges the validity of an election. Such actions are governed by Title IV of LMRDA. Plaintiffs' exclusive remedy is to file a complaint with the Secretary of Labor. *Furniture Moving & Piano Drivers Local 82 v. Crowley,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984).

The *Crowley* case recognizes an exception to this exclusivity provision. Title IV may not bar post-election relief for Title I claims or other actions that do not directly challenge the validity of an election already conducted. *Id.* at 541, 104 S.Ct. at 2566.

Title I, 29 U.S.C. §§ 411–415, provides a bill of rights for union members. It guarantees equal rights and privileges to nominate and vote for candidates, as well as freedom of speech and assembly, and protection from improper discipline. Title I is enforceable in federal court through a private action filed by the aggrieved union members.

In contrast, Title IV, 29 U.S.C. §§ 481–483, sets detailed regulations aimed solely at protecting union democracy through free and democratic elections. *Molina v. Union De Trabajadores De Muelles,* 762 F.2d 166, 167 (1st Cir.1985), citing *Crowley, supra.*

In this case, plaintiffs are not seeking to set aside the re-run election rather they are seeking compensatory relief for torts related to the election. See *Kupau v. Yamamoto,* 622 F.2d 449, 455 (9th Cir.1980); *Ross v. International Brotherhood of Electrical Workers,* 544 F.2d 1022, 1025 (9th Cir.1976).

In *Kupau,* the court adopted a test to distinguish between Title I and Title IV remedies. "The crucial inquiry is whether a union member has been discriminated against in the exercise of his Title I rights. If so, 'then regardless of the other claims' his Title I cause of action is not preempted by the existence of Title IV claims." *Kupau,* at 455, citing *Depew v. Edmiston,* 386 F.2d 710, 712 (3rd Cir.1967).

Plaintiffs are seeking monetary damages for violations of their rights under LMRDA and for wrongs that occurred prior to, during, and subsequent to the election and its campaign. Plaintiffs' complaint includes claims for financial injury, such as the fines imposed on them or lost wages which resulted from the LMRDA violations. They also seek damages for emotional distress and injury to their reputation. It is a question for the jury as to whether or not plaintiffs should recover compensatory damages for violation of Title I. *Bise v. International Brotherhood of Electrical Workers,* 618 F.2d 1299, 1305–06 (9th Cir.1979); *Christopher v. Safeway Stores, Inc.,* 476 F.Supp. 950, 955 (E.D.Tex.1979), aff'd 644 F.2d 467 (5th Cir. 1981), and *Ross v. International Brotherhood of Electrical Workers,* 513 F.2d 840, 842–43 (9th Cir.1975).

This court holds that defendants' cross-motion for summary judgment on the grounds of no jurisdiction is denied. The court properly has jurisdiction over the matters at hand, and there are genuine issues of material fact to be litigated at trial.

### C. Plaintiffs Motion for Partial Summary Judgment

■ 1. Did defendants violate plaintiffs' right of due process in union disciplinary proceedings?

Under Section 101(a)(5) of LMRDA, a union member may not be disciplined unless (a) served with written specific charges; (b) given a reasonable time to prepare his defense; and (c) afforded a full and fair hearing. The charges must be specific enough to inform the accused member of the offense that he has allegedly committed. He must be given a reasonable period of time to prepare his defense once he knows the nature of the accusations against him. *International Brotherhood of Boilermakers v. Hardeman,*

401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971).

Plaintiffs allege that no fair and impartial hearing was conducted at either the initial hearing or the second trial de novo. A fair hearing is one before a neutral and disinterested body that has not pre-judged the case. One biased member may be sufficient to taint a hearing. *Myers v. Affiliated Property Craftsmen, etc.,* 667 F.2d 817, 820 (9th Cir.1982).

The first trial was clearly biased given that plaintiffs' political opponents actively participated. According to *Goodman v. Laborers' Intern. Union of North America,* 742 F.2d 780, 783 (3rd Cir.1984), the court reasoned that failure to attend a trial hearing and to raise the issue of bias of the trial board does not preclude a plaintiff from raising the issue in a court proceeding under LMRDA. *Goodman,* citing *Falcone v. Dantinne,* 420 F.2d 1157, 1161–62 (3rd Cir.1969). In that case, it was held that it was the responsibility of the defendants to disqualify themselves for bias whether or not plaintiff had actually attended the hearing.

This court finds that the second trial de novo was biased as a matter of law. Plaintiffs allege that the Joint Council ("JC") trial de novo did not cure procedural defects in the first trial because: 1) the JC was biased in that it had previously reviewed the election and made the determination that the initial election was faulty due to campaign irregularities; 2) in the de novo hearing, the JC relied on evidence from the previously tainted hearing; 3) plaintiffs were not apprised of the charges against them and were convicted on entirely different charges than those set out in the written complaint; and 4) plaintiffs were not apprised that the hearing was to be a de novo hearing.

A trial de novo must be fair and impartial as any other trial under Section 101(a)(5) of LMRDA. *Goodman, supra* at 785. Use of records from a prior tainted proceeding in a later hearing can taint the hearing. *Goodman* at 785; see also *Tincher v. Piasecki,* 520 F.2d 851 (7th Cir.1975). In *Tincher,* the court invalidated a union disciplinary proceeding. This was done because the tribunal had considered a report, which it had prepared after convicting the accused at a prior trial, the result of which had been set aside because the accused had received inadequate notice of the charges against him. Although there is no per se rule which would preclude use of information from a previous tainted trial, the *Tincher* case indicates that use of such information would be subject to strict scrutiny. *Rosario v. Amalgamated Ladies Garment Cutters Union Local 10 Etc.,* 605 F.2d 1228, 1244 (2nd Cir.1979).

Based on a combination of the fact that plaintiffs' political opponents served as the trial judges and the use of tainted evidence, this court rules that the first and second trials denied plaintiffs the due process guaranteed them under the LMRDA.

2. Did defendants violate Section 101(a)(4) of LMRDA by disciplining plaintiffs Brooke, Williams and Sandoval because they instituted a lawsuit against Mario Gullo?

This court holds that summary judgment should not be granted on this issue, as questions of material fact remain to be decided by the jury. It has not yet been determined whether or not plaintiffs were disciplined because they initiated the lawsuit or because they went beyond the boundaries of the Executive Board's resolution in investigating Gullo. If the discipline stemmed from misuse of the attorney's time, it would not be related to individual rights but proper union management and use of union finances.

Section 101(a)(4) of the LMRDA expressly protects the right of union members to institute lawsuits:

"No labor organization shall limit the right of any member thereof to institute an action in any court...."

In contrast to the above, however, defendants are claiming that plaintiffs were not disciplined for violation of this section but for misusing union moneys. They claim plaintiffs actions breached their fiduciary duties in fostering their campaign objections.

Given that there appears to be a continuing question of fact on the purpose of the discipline, the case is not ripe for summary judgment at this time on this issue.

## IV

## CONCLUSION

For the reasons stated above this court hereby DENIES defendants' cross motion for summary judgment on the jurisdictional issue, GRANTS plaintiffs' motion for summary judgment on the due process issue and DENIES plaintiffs' motion for summary judgment on the 101(a)(4) claim.

IT IS SO ORDERED.