**Thomas HART and Francis A. Ancewicz, Plaintiffs,**

**v.**

**LOCAL UNION 1292, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, and The District Council of Nassau County, United Brotherhood of Carpenters and Joiners of America, Defendants.**

No. 66–C–499.

United States District Court,
E. D. New York.

May 3, 1972.

Burton H. Hall, for plaintiff Thomas Hart, New York City.

Delson & Gordon, New York City, for defendants; Ernest Fleischman, New York City, of counsel.

BARTELS, District Judge.

Plaintiff Thomas Hart[1] brings this action, pursuant to 29 U.S.C. § 412, against Local Union 1292, United Brotherhood of Carpenters and Joiners of America (International), and The District Council of Nassau County, United Brotherhood of Carpenters and Joiners of America for injunctive relief and damages arising from the Union's improper disciplinary action against him, in violation of 29 U.S.C. §§ 411 and 529. He seeks judgment reinstating him in the Union; declaring void all penalties imposed upon him by the Union; enjoining defendants from (a) enforcing the fines imposed, (b) imposing any penalty by reason of his failure to pay said fines, and (c) interfering with him in his employment; and, lastly, awarding compensatory damages of $40,000, punitive damages of $50,000, and attorneys' fees. Defendants now move to dismiss the complaint for failure by Hart to exhaust the Union trial procedures as

required by 29 U.S.C. § 411(a) (4). The factual background follows.

Hart was charged by Local 1292 with "threatening the life of the Business Representative," Bernard W. Fuchs, on September 13, 1965, and after a trial on December 19, 1965, was ordered expelled by the District Council from the Union. On January 27, 1966, he appealed from this ruling to the General President of the Brotherhood, and on May 27, 1966, after the lapse of four months but before the President had rendered a decision, he instituted this action. On February 3, 1967, the General President reversed the decision in the first Union trial expelling Hart and ordered a second Union trial on the ground that no competent stenographer was present at the first trial as required by § 56I of the Union constitution. On May 15, 1967, Hart was notified of this second trial and of the charges preferred against him but he did not appear and after a trial in absentia on June 6, 1967, the trial committee found him guilty. Based upon this report, the District Council fined him $50 for the offense charged and $150 for contempt of the Union in failing to appear and answer the charge. Hart failed to pay these fines but instead, in September, 1967, sent letters to the General President and to the General Executive Board of the Union protesting the decision. He now claims that the fines were illegally imposed and that he has been deprived of his Union privileges and the opportunity of obtaining employment by reason of his failure to pay the same.

The resolution of this controversy depends upon whether Hart was required to exhaust, and if so, had in fact exhausted his Union trial procedures in both trials before the institution of this action. The Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a) (4), requires exhaustion of all reasonable intra-union hearing procedures, not to exceed a four-month

---

1. A settlement was reached with respect to Francis A. Ancewicz, who withdrew from the action and subsequently died.

lapse of time, before an aggrieved union member can resort to the courts. The section states that a member "may be required to exhaust reasonable hearing procedures" but that he need not exhaust such procedures if it appears that resort thereto would be futile or impose unreasonable delay in the adjudication of his rights. Exhaustion is a condition precedent to litigation enforceable at the court's discretion, depending upon the particular circumstances of each case. Giordani v. Upholsterers International Union, 403 F.2d 85 (2d Cir. 1968); Farowitz v. Associated Musicians, etc., 330 F.2d 999 (2d Cir. 1964). However, the exhaustion proviso is not enforced where "conceded facts show a serious violation of a fundamental right," Libutti v. DiBrizzi, 337 F.2d 216, 219 (2d Cir. 1964), affirmed on rehearing, 343 F.2d 460 (1965), or where resort to union procedures would be futile, Farowitz v. Associated Musicians, etc., *supra,* or "where the internal union remedy is uncertain and has not been specifically brought to the attention of the disciplined party, the violation of federal law clear and undisputed, and the injury to the union member immediate and difficult to compensate by means of a subsequent money award." Detroy v. American Guild of Variety Artists, 286 F.2d 75, 81 (2d Cir. 1961), cert. denied, 366 U.S. 929, 81 S. Ct. 1650, 6 L.Ed.2d 388 (1961). Thus the intra-union hearing procedures must be subject to careful scrutiny.

### First Trial

▪ The Union contends that Hart did not satisfy the reasonable hearing procedures required by the Union constitution before instituting this action, inasmuch as he was not "fined, suspended, expelled, or otherwise disciplined" within the meaning of 29 U.S.C. § 411(a) (5), until after the International had approved the recommendation of the trial committee and this they did not do prior to the institution of this action. There is no merit to this claim. By waiting four months for the trial committee's decision after he took an appeal to the General President before commencing this action on May 27, 1966, Hart fully met the exhaustion requirement of the § 411(a) (4) proviso.

▪▪ Since Hart complied with the exhaustion requirement in the first trial, he is now before this court for the purpose of determining only whether he was "afforded a full and fair hearing" in his union trial as required by 29 U.S. C. § 411(a) (5) (C). Hart claims, *inter alia,* that since no competent stenographer was present at that trial as § 561 of the Union constitution requires, he was not afforded a "full and fair hearing." It is true that subsequent to the institution of this action the General President held that this violation of the Union constitution necessitated a new union trial, even though the trial was tape recorded by the Union. But this is not the only reason the hearing was unfair. The union trial was also defective because of the exclusion of Hart from the trial. Consequently, it is clear that Hart was denied "a full and fair hearing" at his first trial as required by the statute. It follows that he is entitled to a trial in this court for the purpose of fixing any damages which he may have suffered by reason of his expulsion from the Union between the date of the order in the first trial and the date of the order of reversal by the General President on February 3, 1967, if reinstatement occurred at the time, otherwise until the date of the second trial. At the time of the hearing before this court, the matter of awarding counsel fees, if any, will also be considered.

### Second Trial

▪ Hart attacks the validity of the second trial on the ground that it was procedurally and jurisdictionally defective and that accordingly the imposition of the fines was a nullity. The Union, on the other hand, contends that the second trial was in all respects valid and that in addition, since Hart did not appeal from the Union decision, he has again failed to comply with the exhaustion requirement. Hart contends that

he was not required to exhaust union procedures in the second trial for two reasons, and furthermore that he actually did exhaust such remedies. As his first reason for non-exhaustion, he states that since his federal court action with respect to the first trial was then pending before the court at the time of the second trial, prior to which he had exhausted the four-month period, he was not also required to exhaust union procedures at a second trial on the same charge.[2] This argument ignores the purpose of the exhaustion proviso, which is to encourage mature democratic self-government of labor organizations through internal procedures for corrective action. As the court remarked in Detroy v. American Guild of Variety Artists, *supra*, 286 F.2d at 79:

> "The Congressionally approved policy of first permitting unions to correct their own wrongs is rooted in the desire to stimulate labor organizations to take the initiative and independently to establish honest and democratic procedures. * * * Other policies, as well, underlie the exhaustion rule. The possibility that corrective action within the union will render a member's complaint moot suggests that, in the interest of conserving judicial resources, no court step in before the union is given its opportunity. Moreover, courts may find valuable the assistance provided by prior consideration of the issues by appellate union tribunals."

There was no justification for short-circuiting the union procedures in the second trial simply because an action was pending in this court pertaining only to the first trial. Hart has failed to show that resort to the union procedures would have been unfair or futile, particularly

since in the first trial the General President reversed the Council and might have done so in the second trial. The exceptional facts which on occasion obviate the necessity for resort to the hearing procedures provided by the Union are not here present.

 Hart's second reason for not resorting to the union procedures before court action is a claim that his offense came within the protection of the free-speech provisions of the LMRDA[3] and, accordingly, was not within the disciplinary jurisdiction of the Union. At the same time he states that the trial was void for other reasons, which are too insubstantial to require consideration. It is clear that the charge of "threatening the life of the Business Representative" does not fall within the protection of the free-speech provisions of the LMRDA and the facts of this case provide no validity for Hart's contentions. These claims must therefore be rejected. See Reyes v. Laborers Union, Local 16, 327 F.Supp. 978 (D.N.Mex.1971). Compare Kelsey v. Philadelphia Local 8, International Alliance of Theatrical Stage Employees, 294 F.Supp. 1368 (E.D.Pa. 1968), aff'd on other grounds, 419 F.2d 491 (3d Cir. 1969), cert. denied, 397 U. S. 1064, 90 S.Ct. 1501, 25 L.Ed.2d 685 (1970).

 Finally, Hart asserts that he actually exhausted all valid union procedures as to the second trial under Sections 57A, 57C and 57G of the January 1, 1967 Union constitution, which was effective at the time. He did this, he claims, by writing two letters, one dated September 2, 1967 to the General Executive Board, and the other dated September 20, 1967 to the General President of the Union, protesting the decision. Section 57A of the constitution provides

---

2. If Hart's claim had been litigated in this court before the second union trial, the issue before the court would not have involved the merits of the charge against him but would have been limited to whether he received a full and fair hearing at the first union trial. Conse-

quently, had Hart received a favorable decision upon this issue, he still would have been required to exhaust his union remedies before resorting to this court a second time.

3. 29 U.S.C. § 411(a) (2).

that a member who has been "expelled, suspended or fined" may appeal to the General Executive Board of the Union. Section 57C states that

"No appeal can be entertained by the General Executive Board where any sum of money in excess of Fifty Dollars ($50.00) is involved unless the appellant has first paid to the Local Union or District Council Fifty Dollars ($50.00) on account, to be held until the appeal is decided by the General Executive Board * * *. In all cases where the fine is Fifty Dollars ($50.00) or less the member fined shall pay the full amount to the Local Union or District Council imposing same."

Section 57G provides that

"Any member, or any Local Union, District, State or Provincial Council having any grievance may appeal to the General President within thirty days from the date the grievance occurred. * * * "

Reading all three sections together, as they must be read, it is obvious that Sections 57A and 57C provide for the right to appeal from union trials whereas Section 57G applies to appeals involving grievances, an entirely different matter. Payment of $50 is required if the appeal is under Section 57A although not required if the appeal is under Section 57G. These sections are not inconsistent, nor do they provide alternate means of appeal, nor is the payment requirement of Section 57C unreasonable, nor a violation of the mandate for a "full and fair hearing." See Carroll v. Associated Musicians of Greater New York, Local 802, 235 F.Supp. 161, 171 (S.D.N.Y.1963). Hart's appeal was under Sections 57A and 57C and since he failed to make the $50 payment and he did not exhaust the reasonable union procedures following his second trial, he is now precluded from seeking relief in this court with respect thereto.

Defendants' motion to dismiss is denied insofar as the first trial is concerned, and is granted as to the second trial. Accordingly, the case may be placed on the calendar for a hearing to assess damages to be awarded Hart as the result of the first trial, and counsel fees, if any. This is an order.