Karl F. RITZ et al., Plaintiffs

v.

J. J. O'DONNELL et al., Defendants.

Civ. A. No. 1313–73.

United States District Court,
District of Columbia.

June 3, 1976.

J. Gordon Forester, Jr., Washington, D. C., for plaintiffs.

Glenn V. Whitaker, Washington, D. C., for defendant Air Line Pilots Assn.

Gary Green, Washington, D. C., for individual defendants.

## MEMORANDUM

### PRIOR HISTORY

WILLIAM B. JONES, Chief Judge.

Plaintiffs, a group of airline pilots, originally brought this action against their union, the Air Line Pilots Association [ALPA], and certain of its officers [individual defendants], seeking to enjoin them from further proceeding with disciplinary charges against plaintiffs. They alleged that the disciplinary proceedings which had been instituted by the individual defendants and were to be held by ALPA, were motivated by plaintiffs' intra-union opposition to defendants' policies in violation of Section 609 of the Labor-Management Reporting and Disclosure Act [LMRDA], 29 U.S.C. § 529, and further did not provide plaintiffs with a "full and fair hearing" as required by Section 101 of the Act, 29 U.S.C. § 411(a)(5).

On July 18, 1973, this Court enjoined defendants from proceeding with the disciplinary hearing unless it were to be held in Boston, Massachusetts, and counsel for plaintiffs was permitted to appear on their behalf.[1] The Hearing Board members thereafter intervened as parties defendant, the Court's July 18 order was appealed, and the Court of Appeals reversed on December 30, 1974. On January 21, 1975, the Hearing Board convened, and proceeded to hear evidence on the charges brought by the individual defendants in a transcribed hearing.

None of the four charging parties appeared personally at the hearing; rather, they designated Captain David J. Mudd as their representative, who presented solely documentary evidence on their behalf. Neither the charging parties nor the charged parties were permitted to be represented by counsel at the hearing. At the conclusion of the hearing, the Hearing Board entered written findings, dismissing all charges against the plaintiffs except for one charge against plaintiff Ritz. The Board found Captain Ritz guilty of "disobeying or failure to comply with a decision of the ALPA Board of Directors" in that he wilfully refused to report to ALPA the funds which had been collected from Northeast Airline Pilots for the NEA Master Executive Council Legal Fund. See Exhibit 2 to Pl's Motion for Injunctive Relief, filed April 25, 1975. The decision was unanimous.

Thereafter, plaintiff Ritz and defendant O'Donnell appealed the Hearing Board's decision to the ALPA Appeal Board. The Appeal Board convened on March 18–19 in closed session, affirming the Hearing Board's decision, albeit for different reasons with regard to certain of the charges. It further ordered that plaintiff Ritz be expelled from ALPA "unless prior to [May 1, 1975] Captain Ritz has furnished the Treasurer of ALPA a complete accounting of all NEA pilot funds obtained by any and all assessments of NEA pilots in 1972 as required in ALPA procedures for filing LM–2 reports with the U. S. Department of Labor." Exhibit 5 of Pl's Motion for Injunctive Relief, filed April 25, 1975. The decision was unanimous.

The decision of the Appeal Board was set aside by this Court on June 26, 1975. The Court found that the Appeal Board's failure "to give plaintiff Ritz advance notice of the date on which the Board was to meet . . . did substantially interfere with the plaintiff's opportunity to refute the charges

---

1. On July 11, 1973, the Court had denied plaintiffs' motion for a preliminary injunction, although ordering that the disciplinary hearing be fully transcribed for the record in this case. The July 18 injunction was entered because counsel for defendants, after having represented to the court that no counsel for the individual defendants would appear on their behalf at the disciplinary hearing, on July 18 requested permission from the ALPA Hearing Board to appear on behalf of defendants.

against him in violation of 29 U.S.C. § 411(a)(5) (1970)." Memorandum and Order dated June 26, 1975, at 5.[2] The Court then enjoined ALPA from taking any disciplinary action against plaintiff Ritz until at least ten days after the Appeal Board had rendered a decision following a hearing which complied with ALPA's constitution and bylaws, ordered that at least twenty days' notice of the Appeal Board hearing be given each of the parties and ordered that the parties be notified at least ten days in advance of any deadline for submission of additional evidence or argument. *Id.* at 7. The Appeal Board hearing was held on October 21, 1975, and on October 22, 1975, the Board entered its decision in writing. It affirmed the Hearing Board's decision in all respects, and found plaintiff Ritz guilty of "failure to render requested information to the ALPA Home Office needed to complete LM–2 reports required by the U. S. Department of Labor and refusal to follow proper channels as prescribed by the consent Court Order contained in Civil Action No. 1104–70, *Ruby v. Hodgson.*" *See* Exhibit M to Pl's Motion for Injunctive Relief, filed Nov. 3, 1975. The Board then fined plaintiff Ritz $500, to be paid by November 22, 1975. Following a status call before the Court, the parties agreed that the Appeal Board would withhold action on the fine until ten days after this Court had ruled on plaintiff's motion for injunctive relief and defendants' motions for summary judgment. Subsequently, plaintiff also moved for summary judgment, and the cross-motions are now before the Court.

## PROCEDURAL IRREGULARITIES

 Plaintiff Ritz challenges the Appeal Board decision on several grounds, which will be discussed *seriatim.* Prior to doing so, however, it is helpful to set out the principles by which the actions of the Appeal Board are to be judged. Violation of the union constitution and bylaws does not *per se* amount to a violation of the LMRDA. *See Martire v. Laborers' Local Union 1058*, 410 F.2d 32, 36, (3d Cir.), *cert. denied*, 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969); *Navarro v. Gannon*, 385 F.2d 512, 516 n. 6 (2d Cir. 1967), *cert. denied*, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968); *McGovern v. New Orleans Clerks & Checkers, Local 1497 ILA*, 343 F.Supp. 351, 352 (E.D.La.1972); *Buresch v. International Broth. of Elec. Workers, Local 24*, 343 F.Supp. 183, 189 (D.Md. 1971), *aff'd*, 460 F.2d 1405 (4th Cir. 1972); *Null v. Carpenters District Council of Houston*, 239 F.Supp. 809, 814 (S.D.Texas 1965). Rather, the Court must address itself to the question "whether in fact the plaintiff was served with written specific charges and given a reasonable opportunity to prepare his defense and afforded a full and fair hearing as required by Section 411(a)(5) of the Labor-Management Reporting and Disclosure Act." *Buresch, supra* at 190, *quoting from Null, supra* at 814. In determining whether "a full and fair hearing" has been afforded plaintiff, "constitutional due process requirements" serve as the basis for decision. *See Parks v. International Brotherhood of Elec. Workers*, 314 F.2d 886, 912 (4th Cir.), *cert. denied*, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963); *cf. Boilermakers v. Hardeman*, 401 U.S. 233, 246, 91 S.Ct. 609, 617, 28 L.Ed.2d 10 (1971) (section 101(a)(5)(C) requires " 'usual reasonable constitutional basis' for disciplinary action").

With these principles in mind, each of plaintiff Ritz's complaints will be reviewed individually.

*(1) Failure of Five Appeal Board Members to Contribute to Decision.*

 Plaintiff Ritz first complains that only four members of the Appeal Board decided his appeal in contravention of the union constitution and bylaws, Article VIII, Sec. 7. Section 7 states that "[a]n Appeal

---

2. Although the Appeal Board had notified plaintiff of its intention to meet, and had requested him to advise the Appeal Board of any additional evidence or argument he might wish to submit, he was not notified of the date on which the Appeal Board would meet until March 17, 1975, the day before the Board's closed executive session. *See* Memorandum and Order dated June 26, 1975, at 3.

Board shall be established to hear cases appealed to it" and that "[t]he Appeal Board shall be composed of five regular and three alternate members." If in a particular case, the charged party exercises his peremptory challenge to remove one of the regular members, "one of the alternates selected by the challenger shall become a regular member of the Board for hearing the subject case." The rule clearly contemplates that five members will hear each case, although nowhere does it expressly state this. Violation of the rule, however, does not amount to a denial of a full and fair hearing. There is no requirement that the decision of the Board be unanimous; thus, three members could find a charged party guilty. Here, four of the five members found plaintiff Ritz guilty. That he was adjudged by four rather than five members could not conceivably be viewed as a denial of due process, and therefore this particular complaint is without merit.

### (2) Failure of Jones and Sieber to Disqualify Themselves as Appeal Board Members.

■ Two of the four Appeal Board members who joined in the October 22, 1975 decision, Captains Jones and Sieber, were members of the same airlines as were two of the charging parties, Captains Giberson and Davis. Rule D of the Appeal Board's Rules of Procedure provides that "It is the policy of the Board that a member disqualify himself in any case involving pilots of his own airline." See Exhibit I to Pl's Motion for Injunctive Relief, filed Nov. 3, 1975. Even apart from the fact that Captains Giberson and Davis did not take part in the appeal, failure to abide by the rule does not in and of itself constitute a denial of a full and fair hearing.

■ Apparently plaintiff Ritz alleges that the tribunal was biased, and therefore his hearing was not a fair one. It is, of course, well settled that an impartial tribunal is requisite to a full and fair hearing. See Tincher v. Piasecki, 520 F.2d 851, 854 (7th Cir. 1975); Falcone v. Dantinne, 420 F.2d 1157, 1166 (3d. Cir. 1969); Parks v. International Brotherhood of Elec. Workers, 314 F.2d 886, 912 (4th Cir. 1963), cert denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963). There exists some disagreement over the standard by which impartiality is to be adjudged, however. In Parks, supra, the court held that only upon a showing of "specific prejudice" as opposed to "built-in-bias" can a federal court find a tribunal biased. 314 F.2d at 912–13. No other case has specifically stated as much. In Falcone, supra, the court held that plaintiff was denied a full and fair hearing where one of the tribunal had, according to the evidence, prejudged the case against plaintiff. 420 F.2d at 1166–67; see also Stein v. Mutuel Clerks Guild of Massachusetts, Inc., 384 F.Supp. 444, 447–48 (D.Mass. 1974) (one of tribunal prior to hearing stated that men charged were guilty and ought to be punished; full and fair hearing denied). In Tincher, supra, however, the Seventh Circuit held that participation on the tribunal by a person who has been charged with wrongdoing in another union proceeding by one of the charged parties he is called upon to judge renders the tribunal so improper as to amount to denial of a full and fair hearing. 520 F.2d at 855. Even though the tribunal member stated under oath that the charge had no effect on his decision, "[t]he circumstances themselves, by presenting a significant danger of bias, created the inherent impropriety" leading to denial of a full and fair hearing. Id.

■ Even assuming that a person can be denied a full and fair hearing for lack of an impartial tribunal, where the tribunal's bias is based upon "built-in" factors rather than a specific showing of prejudice, the facts of the instant case do not raise to a level of "inherent impropriety" as was the situation in Tincher. Here, the only allegation of bias is that two of the tribunal members were employed by the same airline as two of the original charging parties. Those charging parties were not parties to the appeal (see Exhibit K to Pl's Motion for Injunctive Relief, filed Nov. 3, 1975), and their employment was in no way connected with the charges brought against plaintiff Ritz. While the union's attempt to promote

the utmost appearance of propriety and impartiality by disqualifying Appeal Board members from a particular case involving union members employed by the same airline is laudable, the absence of such a rule or practice, at least where the identity of the employer is not involved in the charges before the tribunal even tangentially, as here, does not constitute "inherent impropriety" resulting in a denial of a full and fair hearing. *See Cornelio v. Metropolitan District Council of Philadelphia and Vicinity, United Brotherhood of Carpenters & Joiners of America*, 243 F.Supp. 126, 129 (E.D.Pa.1965) (claim that fair hearing was impossible because accusers were persons of influence within the union is without merit).

*(3) Failure to Call Accusers and Witnesses in Accordance With Appeal Board Rules of Procedure.*

■ Rule F of the Appeal Board Rules of Procedure states that the procedure for the appeal hearing includes "presentation of evidence, if any, and argument by the appellant." The union constitution and bylaws states that "[t]he Appeal Board may hear appeals solely upon the evidence and decision submitted to it." Article VIII, Sec. 4.C. Clearly, the rules do not require that additional evidence be submitted at the appellate level, and there is no requirement of due process that additional evidence be accepted at the appellate level. It is only mandated that the decision of the union be based upon "some evidence." *Boilermakers v. Hardeman*, 401 U.S. 233, 246, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971). Whether Ritz has a right to confront his accusers at some point during the disciplinary process will be discussed *infra*.

*(4) Presence on Board Staff of Executive Assistant to Defendant O'Donnell.*

■ The standard for determining whether a tribunal is biased already has been treated fully above. It is sufficient here to add only two points. First, the Board's staff coordinator has set out in detail in an affidavit his duties as staff coordinator and as defendant Ritz's admin-

istrative assistant. In both positions, his duties are purely ministerial; he has no input into the decisionmaking process of either the Board or defendant Ritz. Second, it has uniformly been held that mixture of the prosecutorial and judicial functions, by permitting a person to initiate charges and then adjudge, or appoint another to adjudge the guilt or innocence of the charged party, does not violate due process in this area. *See Parks, supra; Null, supra; Jonal Corp. v. District of Columbia*, 533 F.2d 1192, 104 Daily Wash.L. Rptr. 657 (D.C.Cir.1976) (appointment of members of the Contract Appeals Board by D.C. Corporation Counsel, who also argued case before Board, was not a *per se* violation of due process; actual personal bias or prejudice must be shown).

*(5) Failure of Defendant O'Donnell to Appear at Hearing Before Hearing Board.*

■ The union constitution and bylaws provide that a charging party who does not personally appear before the hearing body waives his right to an appeal from the decision of the hearing body, "provided that if he shows good cause for not appearing at the hearing, his rights to appeal shall not be denied." Art. VIII, Sec. 3.D. Defendant O'Donnell in his brief before the Appeal Board explained his absence at the hearing before the Hearing Board, citing his duties as union president. Particularly, his presence was required in Washington, D. C., during that time because of an impending strike by ALPA pilots. The Appeal Board apparently, although not expressly, accepted this explanation as good cause, and there is no basis to overturn that decision.

*(6) Denial of Right to Face Accusers.*

■ The charging parties, defendants here, never appeared at any of the proceedings before the union boards, either at the appellate or hearing levels. The parties agree, and the courts have held, that the right of confrontation and cross-examination are fundamental to the "full and fair hearing" requirement. *See* Def. ALPA's Cross-Motion For Summary Judgment, filed

May 9, 1975, at 16; Charging Parties' Motion For Summary Judgment, filed May 7, 1975, at 22; *Tincher v. Piasecki, supra* at 854; *Parks v. IBEW, supra* at 912. The only question is whether that right was waived by the plaintiffs here.[3]

■ The Hearing Board recognized and stated in the presence of the accused, plaintiffs here, that they had the right to confront and cross-examine the charged parties. *See* Transcript of Hearing, Vol. 1, pp. 96, 155–56, 180; Vol. 2, p. 38.[4] The representative for the charging parties, defendants here, offered several times to produce for cross-examination any witnesses requested by plaintiffs. *See* Transcript of Hearing, Vol. 1, pp. 83, 96, 145, 178–79; Vol. 2, pp. 60, 159, 166. Each time, however, the accused parties either expressly or silently decided not to specifically request witnesses, even though they stated awareness of their right to do so. *See* Transcript of Hearing, Vol. 1, pp. 84, 179; Vol. 3, p. 159. For whatever reason, the accused parties, knowledgeable of the right to cross-examine their accusers and other witnesses against them, did not exercise that right before the Hearing Board. To now complain of the Appeal Board's refusal to hear evidence or to require defendant O'Donnell to appear before it at the request of plaintiff is untimely and without merit.

### (7) Failure of Appeal Board to Notify Other Charged Parties of Appeal Hearing.

■ The other plaintiffs here (not plaintiff Ritz), whom the Hearing Board had absolved of all charges, were not notified of the Appeal Board hearing, even though their acquittal had been appealed by defendant O'Donnell. This, of course, violated the Court's June 26, 1975 order, which mandated that notice be given to "all parties." The action of the Appeal Board upholding the Hearing Board's acquittal of these other plaintiffs makes this error harmless. Plaintiff Ritz, who was notified according to the terms of the Court's order, has no standing to complain of the lack of notice to the other plaintiffs.

### (8) Alleged Failure to Hold Appeal Board Hearing Within 120 Days of the Date When Charges Were Preferred.

■ Article VIII, Sec. 4.C of the union constitution and bylaws states that "[t]he Appeal Board shall issue its decision no later than one hundred twenty (120) days from the date the charges were initially filed." The charges were filed by the defendants on May 25, 1973. Between July 18, 1973 and January 20, 1975, when the mandate was issued by the Court of Appeals, the parties were unable to conduct even the initial hearing because of this Court's July 18 order. The first Appeal Board decision was issued March 19, 1975. Adding the number of days elapsed during the periods before the July 18, 1973 injunction and after the January 20, 1975 mandate, a total of 112 days elapsed between the filing of the charges and the Appeal Board decision.

The plaintiffs appealed from the March 19, 1975 Appeal Board decision, which the Court as a result held procedurally invalid on June 26, 1975. As the defendants point out, by ordering that the parties be given at least twenty days' notice of the Appeal Board hearing (which, when added to the 112 days already elapsed, would necessarily exceed the 120-day limit), the Court did not intend to nullify the Appeal Board hearing under this rule. The delay being caused at least in part by plaintiff's recourse to the

---

**3.** The argument made in the latest round of briefing by defendants, that Rule F of the Appeal Board's Rules of Procedure expressly precludes cross-examination of other parties and that the Board has no authority to subpoena witnesses, is without merit in light of the requirement that the accused be afforded the right to cross-examine and confront his accusers.

**4.** In this regard, Board Member Vaughter's comment at the close of the charging parties' case is particularly significant: "We have been sort of waiting, I think, for someone to suggest that their accuser be here to face them, but nobody seems to want to do it." Transcript of Hearing, Vol. 1, p. 180. There was no response to this statement.

Court, and there being no violation of the due process standard in such a delay, it does not invalidate the proceedings.

### (9) Consideration of June 27, 1973 Affidavit Executed by Ritz.

█ Plaintiff Ritz complains that the Appeal Board's consideration of a June 27, 1973 affidavit, in which he stated that he had filed the prescribed LM–2 reports with the Department of Labor directly, rather than through ALPA, violated due process in that he was found guilty of an action not included in the May 25, 1973 charges. In this regard, it is important to remember what Ritz was found guilty of:

9. Captain Karl F. Ritz is found guilty of charges filed under Article VIII, Section 1(11) due to failure to render requested information to the ALPA Home Office needed to complete LM–2 reports required by the U. S. Department of Labor and his refusal to follow proper channels as prescribed by the consent Court Order contained in Civil Action Case No. 1104–70, *Ruby v. Hodgson.*

Exhibit M to Pl's Motion for Injunctive Relief filed Nov. 3, 1975.

Defendants argue that the affidavit did not form the basis of a charge (for which there admittedly would be no notice given) of improper filing, but that it was admitted as evidence solely for the purpose of demonstrating Ritz's continued adamant refusal to follow ALPA procedures regarding the filing of LM–2 reports. According to defendants, the document merely evidences Ritz's intention prior to the May 25, 1973 charges.

Paragraph 9 of the Appeal Board's decision can reasonably be so interpreted. It notes two actions of which Ritz was guilty: (1) failure to render the requested information to the ALPA Home Office and (2) refusal to follow proper channels as prescribed by the earlier consent decree in *Ruby v. Hodgson.* The second charge could be interpreted as finding Ritz guilty of filing the LM–2 report with the Labor Department on June 20, 1973, as outlined in his June 27 affidavit, but it could equally be interpreted as finding him guilty of preparing prior to May 25, 1973 to file the LM–2 reports on his own in June. This interpretation is buttressed by the fact that there is no mention of the June 20 filing in paragraph 9 of the decision, only a vague reference to "refusal to follow proper channels." The affidavit evidenced the refusal by establishing that his failure to report culminated in filing the report on his own. The interpretation being reasonable, the decision must stand.

### (10) Alleged Violation of the Sixty Day Rule.

█ Plaintiff Ritz's final challenge of procedural error involves the union constitution, Art. VIII, Sec. 3.B, which provides that a charging party must file charges against the accused within 60 days after he becomes aware of the alleged offense. Plaintiff claims that the charging parties had knowledge of the Northeast Airlines Master Executive Council activities from the minutes of the meetings between June 19, 1972 and November 21, 1972. This may be true, but the minutes of those meetings do not disclose Ritz's intention to refuse to report to ALPA headquarters. Rather, they disclose the assessments made by the Master Executive Council of the Northeast pilots, and the use to which the assessed money was put. The charge against Ritz, failure to render information to the ALPA Home Office, could not have arisen until December 1972 when the request for the information was made, and could reasonably not have arisen until April, 1973, when Ritz finally made it apparent that he would not render the requested information. That the Appeal Board considered this question and accepted this version is apparent from the fact that it dismissed several charges regarding improper assessment of the Northeast pilots because the charges were known to defendants here more than 60 days prior to May 25, 1973. *See* Exhibit M to Pl's Motion for Injunctive Relief filed Nov. 3, 1975. This determination, having a reasonable basis, cannot be overturned.

*(11) Lack of an Evidentiary Basis for Appeal Board's Decision.*

■ In determining whether the decision itself meets due process guidelines, this Court is limited in its scope of review to determine whether there is "some evidence" to support that decision. *Boilermakers v. Hardeman,* 401 U.S. 233, 246, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971). Plaintiff Ritz contends there is no evidence showing that it was the policy of ALPA, or that Ritz knew it was the policy of ALPA, to file the LM–2 reports through ALPA rather than directly from the Northeast Master Executive Council. There is, however, at least "some," if not "substantial" evidence in the record to support the Board's determination.

On August 9, 1971, ALPA entered into a consent order with the government concerning the status of its Master Executive Councils and statutorily mandated reporting requirements applicable to those councils. In pertinent part, the consent order stated:

> "plaintiff [ALPA] agrees and it is therefore ordered that plaintiff's Master Executive Councils will, within six months from the date of the filing of this order, each file a Labor Organization Report as required by Section 201(a) of the Act (29 U.S.C. 431(a)), signed by its President and Secretary, or corresponding principal officers, in such detail and upon such forms provided by the Regulations . . ."

*Ruby v. Hodgson* Civil Action No. 1104–70 (D.D.C.). Plaintiff Ritz interprets the order as requiring the President and Secretary of the Master Executive Council rather than the President and Secretary of ALPA to submit the LM–2 forms. Whether that is the case or not, ALPA instituted procedures to implement the Court's consent order, which specifically provided that "the Association [ALPA] cause [LM–2 reports from the Master Executive Councils] to be filed with the Department of Labor" after securing "all necessary data from . . . the various Local Councils." Exhibit 9 of ALPA at Appeal Board Hearing. On August 10, 1972, the ALPA treasurer sent a letter to all local council chairmen detailing the procedures for submission of "all necessary data" to the ALPA Home Office so that the LM–2 reports could be filed by it. The Northeast Airlines Master Executive Council initially complied with the Treasurer's directions. On December 1, 1972, ALPA's Accounting Department Director wrote to plaintiff Ritz requesting that he submit the necessary information for 1972, in accordance with the union rules. A similar letter was written to plaintiff Ritz again on April 3, 1973, stating that the information was necessary "in order to file Labor Department disclosure report LM–2 for 1972 as required by order of the U. S. District Court for the District of Columbia and the Executive Committee Resolution." Exhibit 15 of ALPA at Appeal Board Hearing. Ritz responded on April 17, 1973, stating that he could not account for the funds assessed before he was elected council chairman on October 12, 1972. He never did account to the union for the 1972 funds, but filed an LM–2 report with the Labor Department for all of 1972 on June 20, 1973.

While there are many other communications lending support to the Appeal Board's conclusion (*see* defendant ALPA's Motion for Summary Judgment filed May 9, 1975, at 46–52), these actions amply satisfy the requirement that "some evidence" exist to find plaintiff Ritz guilty of "failure to render requested information to the ALPA Home Office needed to complete LM–2 reports" and "refusal to follow proper channels as prescribed by the consent Court Order." It is rational to interpret Ritz's conduct as violative of union constitution Article VIII, Sec. 1(11), which prohibits "doing any act contrary to the best interests of the Association or its members." The propriety of punishment for violation of such a regulation is not a question for the Court. As the Supreme Court said in *Boilermakers v. Hardeman, supra,* in reviewing a similarly broad regulation, "We think that . . . § 101(a)(5) was not intended to authorize courts to determine the scope of offenses for which a union may discipline its members." 401 U.S. at 244, 91 S.Ct. at 616.

There being sufficient evidence to support a finding that plaintiff Ritz violated the union constitution, that finding must be upheld.

## REPRISAL ALLEGATIONS

Plaintiffs' final challenge to the defendants' actions is that they were in fact motivated by plaintiffs' bringing suit against the union as well as other political activities. They rely on three pieces of evidence, all proffered through affidavits by plaintiff Ritz: (1) Ritz had been told by another pilot that defendant O'Donnell had asked the Executive Committee to appoint Captain Miles as chairman of the Hearing Board because the hearing would be "politically sensitive" in nature; (2) Ritz had protested ALPA election procedures at a meeting of ALPA's Board of Directors in November, 1974; (3) on May 25, 1973, when defendant O'Donnell had brought charges against plaintiff Ritz for withholding financial information, 23 other Master Executive Council chairmen had not yet submitted their LM–2 reports to the Labor Department.

Even assuming the legal sufficiency of the political reprisal allegations, the evidence submitted by plaintiffs is insufficient as a matter of law. Initially, it should be noted that only the first evidentiary item relates to plaintiffs other than Ritz. As will be noted shortly, that item does not comply with Rule 56 and cannot be considered. Therefore, the only alleged reprisal supported by any evidence at all is reprisal against plaintiff Ritz.

■ Item 1 cannot be considered by the Court. Rule 56(e) requires that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence . . ." Item 1 is an affidavit of plaintiff Ritz relating statements made by another Northeast pilot which in turn relate statements allegedly made by defendant O'Donnell. While the latter would be admissible as admissions of a party opponent, the intervening party's statements, not made under oath or in other judicial proceedings, constitute inadmissible

hearsay. Therefore, Item 1 cannot support plaintiff's allegations.

■ Item 2 relates plaintiff Ritz's November 1974 protest of election procedures recently adopted by the Executive Board of the union. These incidents are clearly irrelevant to the motivation for bringing charges in May, 1973. Moreover, there is no evidence that defendants were upset by Ritz's actions, or that they intended to discipline him for those actions. As a matter of law, Item 2 cannot support plaintiff's allegations.

■ Finally, Item 3 relates that 23 other LM–2 reports were not filed with the Labor Department at the time charges were brought against Ritz for failure to cooperate with the union. Failure to timely file with the Labor Department and failure to cooperate with an order of the union are two distinctly different actions. There is *no* evidence that the other 23 chairmen refused to supply requested information to the ALPA Home Office or that they refused to follow proper procedures in filing the LM–2 report. To argue that Ritz was "singled out" is simply not supported by any facts which show that other chairmen were engaged in similar refusals to abide by union regulations.

■ Regardless of the insufficiency of the evidence, Ritz's political reprisal claim is without legal basis. Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2) protects a union member's right of free speech and assembly, with the following proviso:

*Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

Ritz was found guilty of "[d]oing any act contrary to the best interests of the Association or its members" by his failure and refusal to report requested information to the ALPA Home Office, information which, as noted earlier, the ALPA Executive Com-

mittee had found required by the consent order in *Ruby v. Hodgson.* Regulations had been promulgated, at least two requests had been made to plaintiff Ritz to comply with the regulations, and Ritz had refused. The regulations were intended expressly to effect the legal obligation of the union, and were thus proper within the contemplation of Section 101(a)(2).

This is not to say that a court should not void disciplinary action which interferes with a union member's Section 101(a)(2) rights of free speech and assembly. Where a union attempts to discipline a member for exercising those rights, courts have not hesitated to nullify the disciplinary action. *See Kuebler v. Cleveland Lithographers and Photoengravers Union Local 24–P,* 473 F.2d 359 (6th Cir. 1973); *Cole v. Hall,* 339 F.2d 881 (2d Cir. 1965). Where the actions of the union member do not fall within the free speech protection of Section 101(a)(2), however, the union member cannot resort to that section to nullify disciplinary action. *See Hart v. Local Union 1292, United Brotherhood of Carpenters & Joiners of America,* 341 F.Supp. 1266 (E.D.N.Y.1971), *aff'd* 497 F.2d 401 (2d Cir. 1974). And while this Court has found no decision directly in point, if it were found that a union was utilizing a vaguely worded prohibition of action "contrary to the best interests of the union" in order to chill a union member's freedom of speech through constant disciplinary action brought under the section for insignificant actions, courts should find such action violative of Section 101(a)(2). *Cf. Nelson v. Johnson,* 212 F.Supp. 233, 252 (D.Minn.1963) ("vague constitutional provisions engineered by those in positions of trust will not be allowed to hamper the democratic process").

Here, however, plaintiff Ritz was found guilty of violating a union regulation unrelated to his exercise of free speech and assembly. As this Court noted early in the history of this case, the charges were filed for a legitimate purpose: violation of certain financial obligations. *See* Transcript of July 9, 1973 hearing at 4–6. Whether O'Donnell or any of the other charging parties were in part motivated by Ritz's earlier actions in opposition to their actions as officers of ALPA is irrelevant to the propriety of the disciplinary action in such a case. *See Burke v. International Brotherhood of Boilermakers, etc.,* 302 F.Supp. 1345, 1352–53 (N.D.Cal.1967), *aff'd* 417 F.2d 1063 (9th Cir. 1969). In any event, there is no evidence of any such motivation.

Plaintiff Ritz's allegations of political reprisal should be rejected, both on the facts and on the law.

## ORDER

Upon consideration of the parties' cross-motions for summary judgment, the memoranda and exhibits submitted in support thereof and in opposition thereto, and for the reasons expressed in the Court's Memorandum filed in this action this same day, it is this 3rd day of June, 1976, without a hearing pursuant to Local Rule 1–9(f),

ORDERED that plaintiffs' motion for summary judgment be and the same hereby is denied; and it is further

ORDERED that defendants' motions for summary judgment be and the same hereby are granted.