**James D. RICKS, Plaintiff,**

v.

**William H. SIMONS, et al., Defendants.**

**Civ. A. No. 90–2551 (CRR).**

United States District Court, District of Columbia.

March 25, 1991.

Arnold B. Podgorsky of Gerst, Heffner, Carpenter and Podgorsky, Washington, D.C., for plaintiff.

David Jonathan Cohen and Barbara L. Camens of Barr, Peer and Cohen, Washington, D.C., for defendants.

MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

I. BACKGROUND

The Plaintiff, James D. Ricks, is a teacher in the District of Columbia public schools ("DCPS") who desires to submit a nominating petition on or before April 30, 1991 for the presidency of the Washington Teachers' Union ("WTU"). However, in November of 1990, after years of litigation surrounding the Plaintiff's membership status in the WTU, an Arbitrator rendered a decision on disciplinary charges against the Plaintiff. The Arbitrator upheld five of ten charges brought by the WTU, and expelled Plaintiff from the union for a four-year period. *See* Arbitrator's Report, *Plaintiff's Motion for a Temporary Restraining Order and to Reopen Action,* Attachment 1. (hereinafter, "Arbitrator's Report"). Plaintiff then moved for a temporary restraining order in March of 1991, and requested that this Court reopen and reverse the Arbitrator's decision.

The Court heard the parties' arguments on March 22, 1991. At that time, the parties agreed to consolidate the temporary restraining order with a hearing for preliminary injunction, and also agreed that the Court could now render a decision on the merits at this time pursuant to Federal Rule of Civil Procedure 65(a)(2). Moreover, the parties agreed that the Court could render a final decision on the basis of the current record and the papers filed on the temporary restraining order.

The Plaintiff's claims arise under the Labor–Management Reporting and Disclosure Act of 1959, ("LMRDA"), 29 U.S.C. §§ 401 *et seq.,* and the First Amendment. He argues that the Arbitrator's decision should be reversed for essentially two reasons: (1)

the charges brought by the WTU are time-barred by the WTU's Constitution and by-laws because they were not brought within six months of discovery of Plaintiff's alleged wrong-doing; and (2) the charges violate his First Amendment rights of speech and association because they are a mere pretext, designed to prevent a candidate with pro-NEA views from launching a successful candidacy against the incumbent WTU administration. Upon consideration of the Plaintiff's motion, the Defendant's response thereto, the entire record in this case, and the applicable law, the Court hereby denies the Plaintiff's Motion and dismisses the case on the merits.

## II. ANALYSIS

A. *Because the Arbitrator's Findings Are Supported By the Evidence, and Because a Union's View as to What Constitutes Wrongful Conduct Deserves Deference, the Court Will Not Reopen the Proceedings.*

The Plaintiff claims that the WTU invalidly prosecuted him because the statute of limitations in the WTU constitution and by-laws barred all of the charges.[1] The Plaintiff claims that, because some of the wrongful actions occurred in 1984 and 1985 when Ricks admittedly was not a member of the WTU, the WTU could not have instituted charges # 2, 4 or 9 at all.[2] Moreover, the Plaintiff claims that, even if the WTU could have instituted charges # 2, 4 and 9, these charges should have been brought within six months of discovery of wrongdoing. Furthermore, Ricks alleges that charges # 1 and 3[3] are time-barred because they were not brought within six months of discovery and are part of an invalid "revision" of charges. The Arbitrator considered these challenges and upheld the WTU's right to bring all of the charges.

Before discussing the Plaintiff's specific claims, the Court must point out that union disciplinary proceedings generally are not subject to intensive judicial scrutiny. In *International Brotherhood of Boilermakers v. Hardeman,* 401 U.S. 233, 244, 91 S.Ct. 609, 616, 28 L.Ed.2d 10 (1971), the Supreme Court explained that LMRDA "was not intended to authorize courts to determine the scope of offenses for which a union may discipline its members." The Court examined the legislative intent behind LMDRA, and noted that, under the statute, "a union may discipline its members for offenses not proscribed by written rules at all." *Id.* The Court also noted that, in light of the union's broad disciplinary power, "it is surely a futile exercise for a court to construe the written rules in order to determine whether particular conduct falls within or without their scope." *Hardeman,* 401 U.S. at 244–45, 91 S.Ct. at 616.

■ LMRDA guarantees workers a full and fair hearing and "this guarantee requires the charging party to provide some evidence at the disciplinary hearing to support the charges made." *Hardeman,* 401 U.S. at 246, 91 S.Ct. at 617. However, courts "have consistently held that a union's violation of its constitution or by-laws 'does not *per se* amount to a violation' of the Landrum–Griffin Act." *Bunz v. Moving Picture Mach. Operators,* 567 F.2d 1117, 1120 (D.C.Cir.1977), *citing, Ritz v. O'Donnell,* 413 F.Supp. 1365, 1370 (D.D.C. 1976), *aff'd on other grounds,* 566 F.2d 731 (D.C.Cir.1977). If there is a violation of the union's constitution or by-laws, a plaintiff

---

1. Article III, section 6 of the WTU Constitution and By–Laws provides that: "No charge shall be valid which is filed more than six months after the alleged wrongful conduct is discovered."

2. Charge 2 claims that, in 1984–85, Ricks violated Article III, section 5 of the WTU Constitution and By–Laws by serving as executive director of the D.C. chapter of the NEA, and by acting in this capacity to persuade teachers to abandon WTU in behalf of NEA. Charge 4 claims that, from 1984–88, Ricks violated section 4 of the By-laws by urging teachers to support a competing NEA union local. Charge 9 claims that, due to his activities in 1984, Ricks is guilty of dual unionism. *See* Arbitrator's Report at 8–9.

3. Charge 1 alleges that Ricks violated Article III, section 2 of the By–Laws by submitting a nominating petition for the presidency of the union in April 1989 when he was not a member in good standing. Charge 3 alleges that Ricks sought membership by fraudulent means, due to untruthful statements made in a court proceeding in 1989. *See* Arbitrator's Report at 8.

must demonstrate that this deviation deprived him of a fair hearing, *see Curtis v. International Alliance of Theatrical Stage Employees*, 687 F.2d 1024 (7th Cir. 1982), or denied him rights guaranteed by LMRDA. *Bunz*, 567 F.2d at 1120. The Court evaluates the Plaintiff's claims in this context, and finds that the Arbitrator's decision was supported by the evidence, and that the Plaintiff's rights to a full and fair hearing were not abridged.

### 1. CHARGES # 2, 4 AND 9

█ Charges # 2, 4 and 9 were supported by the evidence. As the Arbitrator found, the WTU did not have knowledge of the extent of the Plaintiff's relationship with the rival NEA union by April of 1984, when Plaintiff Ricks terminated his membership in the WTU. While some members of the WTU obviously were aware of Plaintiff's opinions regarding the NEA, there was no evidence that the WTU had discovered the extent of Plaintiff's "insurrectionist" activities and his institutional ties to NEA prior to the time when Ricks' left the union. In fact, the Arbitrator uncovered evidence that Plaintiff actively attempted to conceal his activities on behalf of the NEA during this time. Because the Plaintiff's institutional ties to the NEA formed the crux of the WTU's charges against him, this Court upholds the Arbitrator's predicate factual findings on the discovery and tolling issues.

Plaintiff Ricks now argues, however, that the WTU should have brought charges during the intervening 1984–1989 period as soon as his relationship to NEA was uncovered. In making this argument, Plaintiff alleges that he was still officially a member of the union during the 1984–1989 period because the Executive Board did not terminate his membership for non-payment of dues until March 9, 1989. For numerous

reasons, the Court will not entertain this argument here.

█ First, the Plaintiff is barred from asserting this argument by res judicata. In an earlier stage of this litigation, the Plaintiff claimed that he was a member of the WTU and deserved LMRDA protection in any disciplinary proceedings brought against him. The Court resolved this claim against the Plaintiff and found that the Plaintiff "was an active member ... from 1967 until sometime in April of 1984." *Ricks v. Simons, et al.*, Civ. 90–249, Mem. Op. at 1, 1990 WL 116834 (D.D.C.1990). However, despite his non-membership status, the Court denominated the Plaintiff a "member in substance" so that he could qualify for LMRDA protection in any subsequent disciplinary proceedings. *Id.* During the prosecution of this previous suit, the Plaintiff could have argued that only the action of the Executive Board could affect a final termination, but the Plaintiff did not make this claim. Moreover, the Plaintiff never appealed this Court's decision. It remains a valid, final judgment on the merits of the claim of membership during the 1984–1989 period. The Plaintiff's claims is barred because "under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, n. 6, 102 S.Ct. 1883, n. 6, 72 L.Ed.2d 262 (1982) *reh'g denied*, 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405.[4]

█ Secondly, the Plaintiff has admitted his non-membership status. As the Defendants correctly point out, the Plaintiff has disavowed his membership status in papers filed with the Court on numerous occasions. *See, e.g., Plaintiff's Verified Motion for a Temporary Restraining Order*, Civ. 90–249, at ¶ 3 ("Incident to taking leave from DCPS effective April 30, 1984,

---

**4.** Even if the Plaintiff could construe this action as raising a different claim or cause of action, principles of collateral estoppel, or issue preclusion, would bar relitigation of the membership issue. Plaintiff could have foreseen that this issue would arise in later litigation, and had a full and fair opportunity to present his argu-

ments in the July, 1990 proceedings. *See Kremer*, 456 U.S. at 468, n. 6, 102 S.Ct. at 1890, n. 6 ("under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties.")

Plaintiff gave up membership of Defendant Local 6.") The Plaintiff cannot recharacterize his story now.[5] Finally, the Arbitrator reviewed the circumstances of the Plaintiff's withdrawal from the WTU in April, 1984. These factual findings are supported by the evidence and belie any claim that the Plaintiff had membership status during the 1984–1989 period. Arbitrator's Report at 1–8.

Having discovered the Plaintiff's infractions after he was no longer a member of the union, the union did not attempt prosecution until after Ricks' rejoined in September of 1989. The Arbitrator found that the decision not to prosecute until after Ricks rejoined the union as an active member was justified, and this Court agrees. As the Arbitrator noted,

> pursuit of such charges when Ricks was no longer the (sic) WTU member, when he had abandoned DCPS employment, and when there was no prospect of his return, would have made such a (sic) proceedings a costly futility absent any jurisdiction to punish him.

Arbitrator's Report at 15. Moreover, the case law supports the union's right to determine what type of actions constitute a violation of its constitution or by-laws. *See Hardeman, supra.* In considering the reinstatement of a former member, a union can decide that certain acts, even if committed when not a member, either preclude membership status or deserve punishment once the person is admitted into membership.

Charges # 2, 4 and 9 were brought in January, 1990, approximately four months after Ricks rejoined the WTU and well within the WTU's statute of limitations period. However, as originally filed, the charges lacked specificity. Thus, in February, 1990, Judge Revercomb issued a temporary restraining order requiring the WTU to admit the Plaintiff to membership and recommended that any hearing on the

disciplinary charges be held in abeyance. *Ricks v. Simons*, Civ. 90–249, 1990 WL 20039 (D.D.C. February 5, 1990). On February 23, 1990, the parties then entered into a stipulation, agreeing to postpone disciplinary charges against the Plaintiff during the period when his membership status was in doubt, and instead to bring forward any additional claims by motions for summary judgment. This Court heard the motions in July of 1990, resolved the question of Ricks' membership status and directed the parties to exhaust their internal union remedies before proceeding further in Federal Court. *Ricks v. Simons*, Civ. 90–249, Mem. Op., 1990 WL 116834 (D.D.C. July 30, 1990). Only after the Court resolved these issues did the WTU contemplate reinstituting disciplinary charges. This course of action was reasonable in light of the on-going litigation between February and July of 1990.

■ Moreover, even if the September charges do not strictly comport with the union's statute of limitations, issuing revised charges actually helped the Plaintiff; these charges were more specific and thereby gave the Plaintiff the ability to mount a better defense. Thus, the Plaintiff cannot prevail because he has not shown "that the union's technical failure to follow its rules deprived him of a fair hearing either by severely impairing his ability to prepare and present a defense or by seriously increasing the risk that the decision-maker will reach an erroneous determination." *Curtis*, 687 F.2d at 1030.

### 2. CHARGES # 1 AND 3

The Plaintiff also attacks the Arbitrator's decision to uphold charges # 1 and 3. Here, the Plaintiff claims that the charges are not supported by the evidence, and that they are time-barred. The Plaintiff does not persuade this Court of either of these claims.

---

**5.** If anything, such a factual admission has become the law of the case, and cannot be relitigated in an appeal or subsequent hearing of the same case. *See, e.g., Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C.Cir.1987). It is beyond dispute that

Civil Action 90–249 is part and parcel of Civil Action 90–2551 as this "appeal" arises out of this Court's July 30, 1990 Order in Civil Action 90–249, directing the parties to proceed to Arbitration in order to resolve the Plaintiff's membership status in the WTU.

Charges #1 and 3 both address the Plaintiff's behavior in procuring membership in the WTU in April and May of 1989. Because these charges were not filed until September of 1990, the Plaintiff contends they are time-barred. The Court rejects this claim for the same reasons that it rejected the claim pertaining to charges #2, 4 and 9. As explained above, the WTU's decision to institute revised charges in September of 1990 was reasonable in light of the on-going litigation and agreements between the parties. Moreover, even if such revised charges were technically defective, this alone does not warrant reversing the Arbitrator's decision. The Plaintiff has not demonstrated that instituting these revised charges impeded his defense or led to an erroneous conclusion about the facts. *Curtis, supra.* Rather, the revised charges had no real negative impact: due to the on-going litigation, the Plaintiff was already aware of the nature of the charges pending against him; was not taken by surprise when charges #1 and 3 were issued; and, due to the revision, was better informed of the charges against him.

■ The Plaintiff also does not convince the Court that charges #1 and 3 lack factual support. As explained above, the Court must satisfy itself that the WTU presented "some evidence" to support the charges made. *Hardeman,* 401 U.S. at 246, 91 S.Ct. at 617. The Arbitrator's decision easily meets this standard. The Arbitrator independently considered how the Plaintiff procured membership in April of 1989. The Arbitrator found credible evidence that the Plaintiff misled the District of Columbia Superior Court when he sought a temporary restraining order.[6] Arbitrator's Report at 19. This evidence is buttressed by the fact that, in denying Plaintiff's request for a preliminary injunction, Judge Sullivan suggested that the Plaintiff be prosecuted for perjury. *See Opposition to Plaintiff's Motion for Temporary Restraining Order and to Reopen*

*Action,* Attachment 1, transcript of May 8, 1989 Hearing, Superior Court Civil Action 89–CA–03926, at 10. The Arbitrator also found credible evidence that the Plaintiff was not a member in good standing when he submitted his nominating petition in 1989 because he had failed to pay his dues. Arbitrator's Report at 17.

The Plaintiff argues that Judge Sullivan's temporary restraining order bestowed upon him the right to submit a nominating petition in April of 1989. While this is correct, the Plaintiff conveniently overlooks the heart of the charge #1—namely, that the Plaintiff only obtained the right to file a nominating petition by misrepresenting his membership status and dues payments to the Superior Court. The Plaintiff's misrepresentations also form the basis of charge #3. The Plaintiff again misses the point of the charge. Charge #3 punishes the Plaintiff for his duplicity in procuring general membership status via the temporary restraining order in 1989, and contrary to the Plaintiff's assertion in his brief, has nothing to do with the Plaintiff's membership status after July 30, 1990.

B.  *The Plaintiff's First Amendment Claims do Not Warrant Reversal of the Arbitrator's Decision Because There is no Evidence That the Charges Were Instituted as a Pretext to Eliminate the Plaintiff's Candidacy or to Punish His Pro–NEA Views.*

■ The Plaintiff urges the Court to reverse the Arbitrator's ruling because the charges were brought "as a pretext to nullify the threat of his views and candidacy to the current administration." *Plaintiff's Motion* at 16. If the Plaintiff could make out this claim, the Court would be obliged to reverse the Arbitrator's rulings in order to protect his First Amendment rights. *See, e.g., Bunz, supra; Ritz v. O'Donnell, supra.* However, the Court finds that the

---

**6.** Again, the Court must point out that the union has a great deal of discretion in determining what type of conduct deserves punishment. *Hardeman, supra.* The fact that there was no

perjury conviction does not preclude the union from conducting its own fact-finding and applying its own disciplinary rules with regard to the Plaintiff's actions in April of 1989.

Plaintiff has not shown that the WTU instituted charges against him solely as a pretext to undermine his candidacy and to stamp out pro-NEA views.

The Plaintiff's claim that he is being punished solely for his pro-NEA views fails. The charges against the Plaintiff arise not only from his pro-NEA activities. Rather, charges # 1 and 3 address wholly separate violations, unrelated to any alleged First Amendment rights.[7] Moreover, the Plaintiff admits that other NEA advocates have not been punished. *See Plaintiff's Memorandum* at 17. This admission undercuts any claim that the WTU is acting only to freeze out those with pro-NEA views.

The Plaintiff also alleges that he is being disciplined because he dares to challenge the current administration while holding pro-NEA views. The Plaintiff offers no direct evidence that this is the case, and only makes analogy to the plight of Harold Fisher, another candidate who was ousted by the WTU. The fact that the Plaintiff desires to launch a candidacy against the incumbent does not prove that the WTU disciplined him in order to remove him from the competition. The Court cannot adopt such a theory because it would effectively shield candidates for union office from disciplinary charges. As described above and as documented by the Arbitrator, the Plaintiff was disciplined with ample evidentiary support. Thus, in order to make out his claim here, the Plaintiff must show that he is a victim of selective prosecution, *i.e.,* that others who committed the same or similar violations went unpunished. The Plaintiff does not meet this burden.

The fact that other pro-NEA, non-candidate teachers went unpunished does not prove that the Plaintiff was punished as a pretext to eliminate his candidacy. The Plaintiff does not allege that these other pro-NEA teachers had the same institutional ties to the NEA as he did, and this fact easily makes the Plaintiff's dual unionism violations more egregious than mere advocacy in behalf of the NEA. Moreover, even apart from the thorny issue of ties to the NEA, the Plaintiff does not show that these other unpunished offenders also committed violations of the type described in Charges # 1 and 3. These charges are in addition to the dual unionism violations and may have provided stronger incentive to the WTU to pursue disciplinary charges against him as compared to other offenders. In short, the Plaintiff offers only a bald assertion and some weak parallels. This evidence does not convince the Court that the Plaintiff was charged for an illegitimate reason. The evidence shows that the Plaintiff violated numerous rules of the union, and the union has a right to prosecute.

## III. CONCLUSION

Upon consideration of the Plaintiff's Motion, the Defendant's Response thereto, the arguments presented to the Court on March 22, 1991, the record, and applicable law, the Court concludes that the Arbitrator's decision was supported by the evidence, that the Plaintiff's rights to a full and fair hearing were not denied, and that the Plaintiff has raised no cognizable First Amendment claim. Accordingly, the Plaintiff's Motion to Reopen and for Temporary Restraining Order is DENIED, and the case is DISMISSED from the Court's docket pursuant to Federal Rule of Civil Procedure 65(a)(2). This Memorandum Opinion shall constitute the Court's findings of fact as required by Federal Rule of Civil Procedure 52(a).

---

**7.** While sympathetic to his claims, the Court expresses no view as to whether prosecuting the Plaintiff for dual unionism violates the First Amendment. The Plaintiff only challenges his expulsion on the basis of the pretextual nature of the charges, and does not directly challenge a union's right to prosecute for dual unionism. The Court will not stretch to resolve a First Amendment issue not raised in the pleadings and not necessary to its decision. This is especially appropriate as Findings # 1 and 3 do not involve free speech issues and are an independent basis upon which to uphold the Arbitrator's ruling. *Cf. Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–348, 56 S.Ct. 466, 482–483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).